UNITED STATES of America, Appellee,

v.

James Howard WENTZ, Appellant.

No. 85–5243.

United States Court of Appeals,
Fourth Circuit.

Argued June 2, 1986.

Decided Sept. 19, 1986.

James W. Carroll, Jr. (Tabakin & Carroll, Pittsburgh, Pa., on brief), for appellant.

John A. Kessler, Asst. U.S. Atty. (David A. Faber, U.S. Atty., R. Lynette Ranson, Asst. U.S. Atty., Charleston, W.Va., on brief), for appellee.

Before CHAPMAN and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

WILKINSON, Circuit Judge:

James Howard Wentz was convicted on federal charges in connection with the theft of a 22–foot Bayliner boat. Wentz appeals on several grounds: first, that the jury received improper instructions concerning the value of the boat; second, that the trial judge violated Wentz's rights under the Double Jeopardy Clause by allowing a retrial after Wentz successfully moved for a mistrial; and third, that the prosecution negligently allowed the boat to deteriorate. Finding no basis for reversal, we affirm Wentz's conviction.

## I.

In May and June of 1983, undercover agents of the FBI and the Pennsylvania State Police met with Wentz several times to discuss the purchase of stolen construction equipment and other items. Wentz had told the agents that he could provide them with such goods. During a fourth meeting in September, after Wentz and the agents failed to agree on the purchase of a stolen bulldozer, Wentz offered to sell the agents a boat. The agents said they would buy it. Five days later, Wentz delivered the stolen boat to the agents.

After the agents received the boat, the government kept it in storage. Despite the government's efforts to protect it, the boat was damaged by vandalism and freezing weather.

In July of 1984, a federal grand jury returned indictments against Wentz and two co-conspirators for their part in stealing the boat. Wentz's co-conspirators pled guilty, while Wentz took his case to trial. Soon after the trial began, the government elicited testimony that Wentz had agreed at the May 1983 meeting to steal some construction equipment. Because this testimony concerned crimes outside the scope of the indictment, the judge declared a mistrial.

The next day, a grand jury was sitting and one of the government witnesses was available. Hence, the government immediately obtained a second, broader indictment. A second trial followed, resulting in Wentz's conviction.

## II.

Wentz was convicted under the National Stolen Property Act, 18 U.S.C. § 2311 *et seq.*, of transporting stolen property, of selling and receiving stolen property, and of conspiring to commit these offenses. One element of these crimes is that the stolen property must have a value of at least $5,000. *See* 18 U.S.C. §§ 2314, 2315. The Act defines "value" as "face, par, or market value, whichever is the greatest...." 18 U.S.C. § 2311. Wentz contends that the trial judge improperly instructed the jury to consider not only the market value of the boat but also its replacement value, a measure that the Act does not permit.

The jurisdictional amount requirement in the statute has two purposes. First, it limits federal jurisdiction to "interstate transportation of stolen goods having substantial value." Second, it prevents "overtaxing the resources of the Department of Justice." *United States v. Grenagle,* 588 F.2d 87, 88 (4th Cir.1978). Cases involving stolen property of less value remain the responsibility of the states. *Id.* Thus, to obtain a conviction under the Act, the prosecution must prove the minimum value as an essential element of the offense. *Accord United States v. Markus,* 721 F.2d 442, 443 (3d Cir.1983); *United States v. Dior,* 671 F.2d 351, 357 (9th Cir.1982).

Because a boat has no "face" or "par" value, the proper measure is that of market value. In the context of the Act, market value is simply what a willing buyer would pay a willing seller. *See United States v. Jones,* 421 F.2d 841, 842 (4th Cir.1970); *United States v. Tippett,* 353 F.2d 335, 338 (4th Cir.1965). *Accord United States v. Perry,* 638 F.2d 862, 865 (5th Cir., Unit A, 1981); *United States v. Bakken,* 734 F.2d 1273, 1278 (7th Cir.1984); *United States v. Robinson,* 687 F.2d 359, 360 (11th Cir. 1982). *Cf. Kirby Forest Industries v. United States,* 467 U.S. 1, 10, 104 S.Ct. 2187, 2194, 81 L.Ed.2d 1 (1984) (applying similar definition of fair market value in eminent domain context).

In the jury instruction that Wentz complains of, the court explained that the $5,000 value was an essential element of the offense. It then explained that value

> ordinarily means market value, that is the price a willing buyer would pay to a willing seller. Now if there is no testimony to support market value for the property, the jury is permitted to consider other reasonable methods of valuation, and among those other reasonable methods of valuation are such items as replacement value less the amount of

depreciation that occurred during the time that the property was in the possession of its owner.

The second measure of value, replacement value less depreciation, would best have been left unsaid. Its meaning is not clear to us, nor could it have been clear to the jury. It may be akin to, if not the same as, the definition of value given in the Act. Whatever its meaning, its inclusion was neither necessary nor helpful.

■ We do not think, however, that the reference to "replacement value less depreciation" in this instruction constitutes reversible error. The judge made clear to the jury that the customary measure of value was indeed market value. Market value was correctly defined for the jury. Most importantly, the court directed the jury to consider the alternative measure only if there was no testimony supporting market value. In fact, the jury received extensive testimony concerning market value. Two witnesses, the manager of a Bayliner dealership and a representative of the firm that insured the boat, testified that the boat had a market value over $5,000, testimony that made unnecessary the jury's consideration of any other method. Where evidence of replacement value was introduced apart from market value, the judge sustained defendant's objections, noting, "What is relevant in this case is the fair market value of the boat immediately before the loss." The only instance of testimony on replacement value permitted was where the witness "made his explanation that that was about two thousand more" than the actual value of the boat.

We agree therefore with the position of the trial court in its post-trial order: "The instruction allowing the jury to consider replacement value was an instruction offered in the alternative should the jury have been unable to reach a fair market value based upon the evidence. The Court finds that there was sufficient evidence for the jury to consider fair market value of the boat in question, and that the evidence supported the jury's verdict in that regard." *See United States v. Alexander,*

748 F.2d 185, 189 (4th Cir.1984) (jury verdict upheld where evidence sufficient to support first alternative factual theory of guilt).

### III.

As noted earlier, Wentz has had two trials. The first trial ended when the prosecution introduced evidence beyond the scope of the indictment and Wentz successfully moved for a mistrial. Wentz contends that his second trial violated the Double Jeopardy Clause of the Fifth Amendment. The district court found that the prosecutor had not provoked defendant's earlier motion for a mistrial and hence that the second trial was not barred by the Double Jeopardy Clause. We decline to disturb that ruling.

When a trial ends in a mistrial, the Double Jeopardy Clause generally does not forbid the government from reprosecuting the defendant. *United States v. Borokinni,* 748 F.2d 236, 237 (4th Cir.1984). The governing rule depends on whether the defendant moved for the mistrial or whether it was granted over his objection. When the accused obtains the mistrial, the conditions for invocation of the double jeopardy bar are strict. A defendant can avoid a second trial only if "the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial...." *Oregon v. Kennedy,* 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982). This standard obtains where, as here, prosecutorial error led the judge to grant defendant's motion.

The question of prosecutorial provocation is obviously one of fact, on which the findings of the trial court may not be set aside unless clearly erroneous. *Robinson v. Wade,* 686 F.2d 298, 309 (5th Cir.1982).

Before defendant's second trial, and in response to his motion to dismiss the indictment, the trial court directly addressed the conduct of the government:

[T]he Court made its determination and quite frankly what was done in open Court in the initial trial in this case either appeared to have arisen, in the Court's

mind, from the negligence or the ignorance of the government in presenting its case in accordance with its proof. It did not, in my estimation, result from the bad faith of the government.

After defendant's second trial, the district court held a hearing to provide defendant an opportunity to present evidence to demonstrate the government's bad faith. No additional evidence was offered. The trial court declined to find that the speed with which the government obtained the superseding indictment was proof of misconduct, noting that a grand jury was already sitting and that the government's major witness was available to testify. The court stated further that, while the superseding indictment was broader in time, "the possible range of penalties which could be imposed upon that indictment are the same."

If there existed a genuine question in the mind of the court about whether the prosecutor had deliberately goaded Wentz into moving for a mistrial, an evidentiary hearing should have been held before the second trial, not afterward. Holding the hearing afterward defeats the purpose of the Double Jeopardy Clause. If a defendant has a valid double jeopardy claim, he should not have to endure the ordeal of a second trial, as the Double Jeopardy Clause is meant to protect the defendant from exactly that. *United States v. Head,* 697 F.2d 1200, 1206 (4th Cir.1982).

■ We decline, however, to find reversible error in these circumstances. The trial judge had already found before the second trial that no goading took place. Nothing in our review of the record leads us to believe that the finding was incorrect. Indeed, the interwoven nature of the events in the investigation lends support to the view that introduction of earlier acts was not meant to provoke. The trial judge was quite familiar with the events surrounding defendant's motion for a mistrial. He was uniquely positioned to characterize the conduct of the government because he had observed at the first trial the government's presentation of the non-conforming proof.

The failure of the defendant at the evidentiary hearing to produce any additional evidence confirms our belief that the district court's initial finding of no prosecutorial bad faith was sufficient in this instance. *Oregon v. Kennedy,* 456 U.S. at 675, 102 S.Ct. at 2089 (standard of prosecutorial provocation "merely calls for the court to make a finding of fact").

## IV.

■ Wentz argues that we should reverse his convictions because the government failed to protect the boat adequately. Due to vandalism and bad weather, the condition of the boat apparently deteriorated while in the government's possession. In Wentz's view, the government's negligence prevented expert witnesses for the defense from inspecting the boat in its original condition to determine whether the boat's market value at the time of the theft exceeded $5,000. We reject this argument.

In *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), a unanimous Supreme Court sketched the extent of the government's duty to preserve evidence:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality ... evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

467 U.S. at 488–89, 104 S.Ct. at 2534.

In this case, Wentz had comparable evidence available. Photographs of the boat, showing its condition at the time of the unlawful sale, were admitted at trial. The owner of the boat testified about its condition. Given these other sources of information about the boat's condition, it is unlikely that Wentz was prejudiced by the

boat's deterioration. There is also no claim that the government in any way conspired in the destruction of the evidence. FBI agents conducted spot checks on the boat and attempted to locate a safe place of storage.

### V.

We have reviewed the various claims of defendant. Although the trial judge did not in all instances pursue the preferable course, no reversible error resulted. The judgment of the district court is therefore

AFFIRMED.