**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony Lee WHITE (89–6462), and
Cardine Humes (89–6461),
Defendants–Appellants.**

**Nos. 89–6461, 89–6462.**

United States Court of Appeals,
Sixth Circuit.

Argued July 23, 1990.
Decided Sept. 12, 1990.

W. Hickman Ewing, Jr., U.S. Atty., Timothy R. DiScenza, Asst. U.S. Atty., John Fowlkes, Asst. U.S. Atty. (argued), Memphis, Tenn., for U.S.

Edward C. Duke, Fed. Public Defender (argued), Memphis, Tenn., for Anthony Lee White.

Timothy R. Holton (argued), Memphis, Tenn., for Cardine Humes, Jr.

Before KENNEDY and MILBURN, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendants-appellants White and Humes appeal the district court's denial of their

motion to dismiss on double jeopardy grounds.

## I.

On May 6, 1989, officers of the Metro Narcotics Unit of the Shelby County Sheriff's Department executed a search warrant at 186 East McKellar in Memphis, Tennessee. The warrant authorized the officers to search for cocaine. The officers knocked and announced their presence and were allowed to enter the house at the address without resistance. Upon entering the house, one of the officers observed an individual, later identified as defendant Anthony White, sitting in a chair. The defendant reached across his body and grabbed a pistol. The officers placed defendant White under arrest along with defendant Cardine Humes, who had opened the door. The officers found cocaine in several different parts of the house.

On May 25, 1989, defendants Anthony Lee White and Cardine Humes were indicted by the Federal Grand Jury for the Western District of Tennessee on two counts of possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and one count for the possession and use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).

A jury trial was commenced on August 9, 1989. On the first day of trial, Assistant United States Attorney Van Vincent asked police officer Roger Swatzyna, who had executed the search warrant, what information the police had received about the premises at 186 East McKellar prior to the execution of the warrant. The officer replied that he possibly expected to encounter a weapon inside. Counsel for defendant White objected to the question. The court sustained the objection, stating, "Well, I think he can testify that he was advised to go to such and such a residence. But he can't say what he was told or what to get prepared for or what he was going to find inside. That is hearsay." The Assistant United States Attorney then asked Swatzyna, "Why did you approach the residence with caution?" The court again ruled that any response indicating what the officer had been told would be inadmissible hearsay. The search warrant had mentioned a black male named "Rob," but Officer Swatzyna did not know this individual.

Counsel for defendant Humes on cross-examination had Officer Swatzyna read from the search warrant the portions dealing with the individual named Rob, but the court would not allow him to read the entire document. In a hearing outside the presence of the jury, counsel for Humes stated that a confidential informant had referred to "Rob" as the individual who was selling cocaine at the residence, and that the officers were looking for him. Counsel for White advised the court that White's defense would include that "Rob" had been dealing in drugs, and the information upon which the officers acted did not include White. The Assistant United States Attorney again sought permission to inquire why the officers approached the home with caution, but the court precluded both the prosecution and the defense from further use of the warrant. Counsel for all parties complied with the court's order concerning the warrant during the remainder of the first day of trial.

When trial resumed the following morning on August 10th, the Assistant United States Attorney called police officer Harry Brown, who had also participated in the search, and the following exchange occurred between him and Brown:

Q. And on that day, were you serving a warrant for 186 East McKellar?

A. Yes, I did.

Q. And when you were serving that search warrant, did you expect there to be a person in the house with a pistol?

A. Yes, we did.

Q. Did you,—was it not expected that Cardine Humes would be there?

Immediately after this question and answer, counsel for defendant White asked to approach the bench. The bench conference began prior to the court reporter's even arriving at the bench. At the bench conference the following discussion took place:

MR. DUKE [counsel for defendant White]: I am going to ask the Court to declare a mistrial.

THE COURT: I will do it.

MR. VINCENT [Assistant United States Attorney]: Your Honor.

THE COURT: I am going to declare a mistrial.

MR. VINCENT: On what grounds, Your Honor?

THE COURT: I will explain it to the jury.

The Court then stated to the jury:

Ladies and gentlemen of the jury, I regret to say that after spending a day on this, I must declare a mistrial because Mr. Vincent asked a leading question that contained information that I had ruled yesterday not to be admitted. The defense attorney has moved for a mistrial on the grounds that it shouldn't have been said in the presence of the jury and I grant the mistrial. You are excused until further order. Turn in your badges.

Counsel for defendant Humes said nothing during this exchange.

On August 14, 1989, the court issued an order declaring a mistrial and characterized the above questioning as follows:

The Court considered this a deliberate attempt to defy the Court's ruling and to get into the record something that had otherwise been objected to by a leading question to counsel's own witness.

The order directed the clerk to reset the case for trial within 70 days.

The clerk failed to reset the case. On October 23, 1989, the district court was handed a note from the Clerk of Court which stated that he had just discovered that this case had somehow been overlooked for setting on the trial calendar and that the case should be commenced that day to comply with the time schedule of the Speedy Trial Act. The court directed the clerk to notify the attorneys and parties to appear in court by 12:30 p.m. that day for a status conference. Both defendants, the Assistant United States Attorney, and Timothy Holton, the appointed attorney for defendant Humes, were able to appear and

did so. When an attempt was made to notify Edward C. Duke, the federal defender who was representing defendant White, it was learned that he was on leave for one week and could not be reached by telephone. Two of his associates appeared at the status conference and advised the court of Mr. Duke's court commitments immediately after his return to his defender duties on October 30, 1989.

Based upon the schedules of all attorneys who were to participate in the case, the court continued the commencement of the trial from October 23, 1989 until November 1, 1989. This nine-day period was excluded from the Speedy Trial Act requirements in order to assure continuity of counsel for defendant White.

On October 30, 1989, attorney Duke called the district court judge to inform him that he and attorney Holton were filing motions to dismiss the case upon double jeopardy grounds. The court then notified counsel that the motions to dismiss would be heard on October 31st, the next day.

At the hearing, the court made oral findings that the motions were not timely filed because they were not filed before the expiration of the 70-day period for commencing the trial in order to comply with the Speedy Trial Act, and were not brought in good faith. The court in addition concluded that there was no bar to a second trial because the mistrial had been granted at the request of defendants. The motions to dismiss on double jeopardy grounds were therefore denied. Counsel for defendants moved for a stay pending appeal. However, the motions for a stay were denied, and the attorneys and parties were ordered to be present to commence the trial the next day, November 1, 1989, as previously scheduled. On November 1, 1989, defendants White and Humes each entered a conditional guilty plea and preserved the double jeopardy issue for appeal. These appeals were timely filed on November 9, 1989.

## II.

■ This court must first determine whether the district court erred in finding

that the motions to dismiss on double jeopardy grounds were not timely filed.

In its order denying the defendants' motions to dismiss, the district court held that each motion was not timely filed because: (1) it was not filed before the 70–day period under the Speedy Trial Act had expired; (2) the court had directed the clerk to reset the trial within 70 days of the mistrial in its August 14, 1989 order; and (3) the Assistant United States Attorney did not have an adequate opportunity to respond to the motion, which was filed the day before the trial was to be commenced.

Defendants argue that the district court's finding that the motions to dismiss filed on October 31, 1989, were not filed prior to the expiration of the Speedy Trial Act's 70–day period was in error because the court had previously excluded the time between October 23, 1989 and November 1, 1989 from the Speedy Trial Act in order to insure continuity of counsel for defendant White. Therefore, the motions were filed within the extension granted by the court.

Defendants rely on this court's decision in *United States v. Wilson*, 534 F.2d 76, 78 (6th Cir.1976), which states that the "proper time" to move to dismiss on double jeopardy grounds is after the government has moved to reset the case for trial or the court on its own motion has set a retrial. Any motion filed prior thereto is premature. *See also United States v. Love*, 597 F.2d 81, 83 (6th Cir.1979). Although the court directed the clerk to reset the case for trial in its order of August 14, 1989, the clerk inadvertently failed to do so, and the court at the October 23rd status conference, on its own motion, reset the case for trial for November 1, 1989. Defendants argue that because the court set trial nine days after the October 23, 1989 conference, the local rule, which provides that opposing counsel has ten days to respond to a motion, was not applicable. Defendants argue that the motion to dismiss was filed as soon as practicable after the court set the case for trial and the time of the filing was in accordance with *Wilson* and *Love*.

The government argues that Federal Rule of Criminal Procedure (Fed.R.Crim.

Pro.) 12(f) provides that failure to raise a defense which must be raised prior to trial constitutes a waiver of the defense. Because defendants' motions were made the day before trial so as to deprive the government's counsel adequate time, before trial, to respond under the local rule, it was not made "prior to trial" within the meaning of Fed.R.Crim.Pro. 12(f). It was therefore within the district court's discretion whether or not to grant relief from the resulting waiver.

We find that the motion was timely filed. It was the fault of the court, not defendants, that the court was under time pressure to comply with the 70–day period of the Speedy Trial Act. Counsel for defendant White was out of town and did not learn that the case had been set for trial until October 30th, two days before the trial was to begin. The defense attorneys were complying with this court's holding in *Wilson* by waiting for the date for trial to be set even though the August 14, 1989 order granting a mistrial had stated that the case would be reset for trial within 70 days. In *Wilson,* the defense attorney moved that the indictment be dismissed on double jeopardy grounds as soon as the judge declared a mistrial. 534 F.2d at 78. This court held that the motion to dismiss was premature because technically defendant had not yet been exposed to double jeopardy. *Id.* We, therefore, believe that the defense attorneys in the present case were correct to wait for the case to be reset for trial and defendants' motions to dismiss on double jeopardy grounds were timely filed.

### III.

■ We must next determine whether the district court erred in denying the motion to dismiss on double jeopardy grounds with regard to defendant White.

Defendant White argues that although a defendant's motion for mistrial ordinarily removes any barrier to a retrial, the Assistant United States Attorney's conduct in the present case falls within the exception defined by the Supreme Court in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72

L.Ed.2d 416 (1982). The Court stated that it is not enough that there can be a finding of prosecutorial misconduct; the conduct must have been so severe that the court finds that it was intentionally calculated to goad the defendant into moving for a mistrial. *Id.* at 673–74, 102 S.Ct. at 2088–89. This court has stated that under *Kennedy*, a second trial will be barred when prosecutorial behavior "was 'intentionally' calculated to cause or invite mistrial." *United States v. Thomas*, 728 F.2d 313, 318 (6th Cir.1984). Defendant argues that because the district court characterized the prosecuting attorney's questioning of Officer Brown as "a deliberate attempt to defy the court's ruling and to get into the record something that had otherwise been objected to by a leading question to counsel's own witness," it necessarily follows that the prosecutor intended to provoke a mistrial.

We disagree with this reasoning. Defendant White overlooks a significant element of the exception which requires a showing of more than a deliberate act—there must be a showing that the prosecutor's deliberate conduct was intended to provoke the defendant into moving for a mistrial. The conduct of the Assistant United States Attorney in the present case is similar to the conduct of the prosecutor in *Kennedy* in which no intent to cause a mistrial was found. In *Kennedy*, the trial court had sustained defendant's objection to a line of inquiry concerning a criminal complaint which the witness had previously filed against the defendant. The prosecutor then inquired of the witness as follows:

PROSECUTOR: Have you ever done business with the Kennedys?

WITNESS: No, I have not.

PROSECUTOR: Is that because he is a crook?

456 U.S. at 669, 102 S.Ct. at 2086. The Supreme Court found that the court of appeals had taken an overly expansive view of the application of the Double Jeopardy Clause by characterizing this conduct as prosecutorial "overreaching" which would preclude a second trial. *Id.* at 668–69, 102 S.Ct. at 2086. In the present case, the Assistant United States Attorney's conduct is similar, because he deliberately sought to elicit information which had expressly been forbidden. The Supreme Court in *Kennedy* accepted the finding of the trial court that the prosecutorial conduct culminating in the termination of the first trial was not so intended by the prosecutor. *Id.* at 679, 102 S.Ct. at 2091. In the present case, the district court concluded that the Assistant United States Attorney's conduct was motivated by "prosecutorial inexperience," even though his conduct was deliberate. Moreover, the district court found no basis for the allegation that he intended to have the defense attorneys move for a mistrial.

Our review of the record supports the district court's finding. There was no sequence of overreaching that pervaded the trial; the Assistant United States Attorney resisted and apparently was surprised by the granting of the motion for a mistrial. Moreover, we believe that the district court's finding that the Assistant United States Attorney did not intend a mistrial should be accorded great deference as the district judge was in the best position to observe the conduct in question in the context of the entire trial. *See Arizona v. Washington*, 434 U.S. 497, 509–10, 98 S.Ct. 824, 832–33, 54 L.Ed.2d 717 (1978); *Abdi v. Georgia*, 744 F.2d 1500, 1503 (11th Cir. 1984), *cert. denied*, 471 U.S. 1006, 105 S.Ct. 1871, 85 L.Ed.2d 164 (1985).

■ For these reasons, we find that the Assistant United States Attorney did not intentionally goad the defendants into moving for a mistrial, and we affirm the district court's denial of the motion to dismiss on double jeopardy grounds in regard to defendant White.[1]

---

1. Defendant White also contends that when a non-frivolous motion to dismiss on double jeopardy grounds is made, the court must grant an evidentiary hearing, relying on *United States v. Jabara*, 644 F.2d 574 (6th Cir.1981). However, *Jabara* did not involve a motion to dismiss following the declaration of a mistrial on defendant's motion. *Id.* at 576. In *United States v. Wentz*, 800 F.2d 1325 (4th Cir.1986), the court found a hearing was necessary only if there

## IV.

■ Finally, this court must determine whether the district court erred in denying the motion to dismiss on double jeopardy grounds in regard to defendant Humes.

Defendant Humes argues that at no time did he join in counsel for defendant White's motion for a mistrial, that he neither actually nor impliedly consented to the declaration of a mistrial, and that therefore the court must show "manifest necessity" for the declaration of a mistrial to prevent the double jeopardy bar from being applicable to him.

The government argues that a defendant is required to object to an action by the trial court in order to preserve an alleged error for appeal. *United States v. Terry*, 729 F.2d 1063, 1069 (6th Cir.1984). The government contends that Humes has waived raising the issue of his consent to the motion for a mistrial by failing to register in a timely fashion his objection to the granting of a mistrial.

We disagree. This court has stated in a case in which it was not clear from the record whether or not an objection to the mistrial had been made:

> More specifically, we cannot determine the substantiality of defense counsel's alleged "non-objection" to the mistrial declarations. Consent to a mistrial order should only be implied where the circumstances positively indicate a defendant's willingness to acquiesce in the order.

*Jones v. Hogg*, 732 F.2d 53, 57 (6th Cir. 1984). *See also Abdi*, 744 F.2d at 1503 n. 3 (although defendant did not object to the declaration of a mistrial, a formal objection is not necessary to show lack of consent).

In the present case, when the district court denied the motions to dismiss, the court stated in its order that "Edward C. Duke, Federal Defender, as attorney for Anthony Lee White, moved for a mistrial during a bench conference.... The court granted the motion for a mistrial and considered it to have been made in behalf of both defendants." We believe, however,

that the record indicates that there was no reason for the court to assume that the motion was made on behalf of both defendants. The statement which precipitated the motion for a mistrial about encountering a person with a gun was evidence prejudicial to defendant White who had the gun, rather than defendant Humes. On the preceding day of trial, counsel for defendant Humes on cross-examination of Officer Swatzyna had him read from the warrant to show that the police were looking for an individual named Rob, not Humes. Although he was charged with possession of a firearm in connection with a drug trafficking offense, Humes was not the one holding the gun and had gotten into evidence the fact that someone else was named in the warrant. The bench conference concerning the motion for a mistrial between counsel for defendant White and Assistant District Attorney Vincent began before the court reporter, who was sitting a few feet away, even had time to approach the bench. The record indicates that defendant Humes did not, either individually or through counsel, consent to the declaration of a mistrial. We do not believe that under these circumstances defendant Humes positively indicated his willingness to acquiesce in the order, and we are unwilling to construe his silence as implied consent.

In *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), the Supreme Court found that the trial judge acted so abruptly in dismissing the jury that had the defendant been disposed to object, there would have been no opportunity to do so. *Id.* at 487, 91 S.Ct. at 558. The Court stated:

> It is apparent from the record that no consideration was given to the possibility of a trial continuance.... When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a mani-

---

existed a genuine issue in the mind of the trial court concerning the prosecutor's intent. *Id.* at

1328. In the present case, no such question existed.

fest necessity for the *sua sponte* declaration of this mistrial.

*Id.* We believe that, in a similar manner, the district court in the present case failed to adequately consider the circumstances surrounding the request for a mistrial in relation to defendant Humes. The district court made no effort to distinguish between defendant White and defendant Humes. Moreover, because of the precipitous manner in which the mistrial was declared, there was little opportunity for counsel for defendant Humes to object.

In a similar case to the case at bar, *Lovinger v. Circuit Court of the 19th Judicial Circuit*, 845 F.2d 739 (7th Cir.), *cert. denied*, 488 U.S. 851, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988), the defendant brought to the court's attention an improper conversation between a police officer and the prosecutor and alleged that the prosecutor was improperly coaching his witness to account for discrepancies in testimony. *Id.* at 741–42. The district court declared a mistrial. The court of appeals for the seventh circuit refused to construe defendant's objection to the conversation into a mistrial motion. The court then stated:

> Lovinger's failure to object to the mistrial declaration also cannot be considered implied consent because he had no opportunity to object. It appears from the record that the judge actually left the courtroom as he finished his statement. He was gone before the defense had any reasonable opportunity to consider the import of his statement and act upon it. *See Jorn*, 400 U.S. at 487, 91 S.Ct. at 558 (trial judge acted so abruptly there was no opportunity to object).

*Id.* at 744. Similarly, in the present case, the jury was discharged before counsel for defendant Humes had any reasonable opportunity to consider the import of the declaration of the mistrial and act upon it. The court had allowed counsel for Humes to read portions of the warrant dealing with an individual named Rob, who was allegedly selling cocaine at the residence, into the record, and part of Humes' defense was that the officers were looking for Rob, not for him. The judge had indicated that he disapproved of further use of the warrant by either the defense or the prosecution because it contained hearsay. Had he been given the opportunity, counsel for defendant Humes may have concluded that he may not have been able to get this statement into evidence in a future trial and that it was in his client's best interest to continue with the present trial. In *United States ex rel. Russo v. Superior Court of N.J.*, 483 F.2d 7 (3rd Cir.), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973), the court stated that a defendant cannot be penalized for failure to object to a mistrial when the declaration of a mistrial came as a surprise and objection in front of the jury might have prejudiced the defendant for trying to "show up" the trial judge. *Id.* at 17. In the present case, counsel for defendant Humes had no advance warning that a mistrial was going to be declared, and the jury was discharged immediately after the bench conference between counsel for defendant White and the Assistant United States Attorney.

■ Defendant Humes has a valued right to have his trial completed by a particular tribunal. *Jorn*, 400 U.S. at 484, 91 S.Ct. at 556. The Double Jeopardy Clause of the Constitution protects this interest by requiring that a trial judge declare a mistrial without the consent of the defendant only after it determines that the mistrial is a manifest necessity. *Arizona v. Washington*, 434 U.S. at 505, 98 S.Ct. at 830. In the present case, we find it difficult to find manifest necessity for the declaration of a mistrial in regard to defendant Humes. The prohibited line of inquiry, concerning the expectation of encountering someone with a weapon when executing the search warrant, was prejudicial to defendant White, who did request a mistrial, not to defendant Humes. Because he did not consent to the declaration of a mistrial and there was no manifest necessity for declaring a mistrial in regard to him, we find that a subsequent trial of his case is barred on double jeopardy grounds.

To conclude, the district court's denial of defendant White's motion to dismiss on double jeopardy grounds is affirmed. The

district court's denial of defendant Humes' motion to dismiss is reversed. Retrial of defendant Humes is barred on double jeopardy grounds. The case of defendant Humes is remanded to the district court to vacate the guilty plea.

KENNEDY, Circuit Judge, dissenting in part.

I disagree with the majority opinion insofar as it concludes that the District Court had no basis for concluding that defendant Humes joined in defendant White's motion for a mistrial. I reach this conclusion for three reasons. First, the prejudicial information against which the objection was made directly implicated Humes' right to a fair trial and, in fact, may have been more prejudicial to Humes than White:

> Question (Assistant United States Attorney): And when you were serving that search warrant, did you expect there to be a person in the house with a pistol?
> Answer (Witness): Yes, we did.
> Question: Did you—Was it not expected that Cardine Humes would be there?
> Mr. Duke (Counsel for defendant White): Your Honor, may we approach the bench?

The direct implication of these questions is that the law enforcement official expected to find Humes at the house and expected to find him with a gun. Although it was in fact White who was found with the gun, both were charged with the possession of a firearm during a drug offense. Humes' counsel's silence could reasonably be assumed to indicate he joined in any objection to these statements and the need for a mistrial.

Second, and more importantly, in the bench conference Humes' attorney made no effort to object to the calling of a mistrial in both cases. Although Humes now asserts that there was no time to lodge such an objection, the facts undercut such an assertion. It is true that the bench conference was a short one. Nevertheless, the Assistant United States Attorney

against whom the court was venting its frustration did have time to ask the court the basis for its decision to grant a mistrial. It is difficult to understand how a defense attorney who desired to avoid a mistrial and with whom the court was not angry would have less of an opportunity to lodge his objection than the Assistant United States Attorney.

Finally, even after the mistrial was announced to the jury, Humes' attorney could have requested that his case be severed from White's and continue in front of the same jury. Since it was inevitable that the jury learn of the mistrial, I see no possible harm to Humes from having the court announce a mistrial in both cases and then later change the ruling to allow Humes' case to continue. In light of these facts, I conclude that the "circumstances positively indicate [Humes'] willingness to acquiesce in the order." *Jones v. Hogg,* 732 F.2d 53, 57 (6th Cir.1984).[1]

Furthermore, even were I to concur in the majority's conclusion that Humes did not affirmatively join in the mistrial, I believe that his conviction should be affirmed under the "manifest necessity" test. In *Arizona v. Washington,* 434 U.S. 497, 510–14, 98 S.Ct. 824, 832–35, 54 L.Ed.2d 717 (1978), the Court held that a judge's decision to order a mistrial is entitled to great respect when the mistrial is occasioned by the improper and prejudicial remarks of one of the trial attorneys. In *Washington,* the Court declined to overturn a defendant's subsequent conviction on double jeopardy grounds where the trial court declared a mistrial on the motion of the prosecutor during a previous trial. The mistrial had been granted because the defendant's attorney made comments prejudicial to the prosecution in his opening statements to the jury. The Court noted that "[n]either party has a right to have his case decided by a jury which may be tainted by bias." *Id.* at 516, 98 S.Ct. at 835. To protect the public's interest in the fair administration of justice, the Court concluded that it was

---

1. Even if the majority has some question about Humes' acquiescence in the mistrial, the appropriate course is to remand for an evidentiary hearing on this issue, not to presume that Humes opposed the mistrial.

necessary to "accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." *Id.* at 511, 98 S.Ct. at 833. A trial court's decision to call a mistrial should only be reversed if "a trial judge acts irrationally or irresponsibly" or otherwise acts outside his or her "sound discretion." *Id.* at 514, 98 S.Ct. at 834.[2] On this record, I cannot conclude that the District Court abused its discretion in calling a mistrial.

Accordingly, I respectfully dissent from the majority's decision to reverse Cardine Humes' conviction.

2. Nor can the sufficiency of the record be challenged solely because the District Court did not analyze the case specifically in terms of the manifest necessity test articulated in *Arizona v. Washington.* The Court in that case specifically noted that it was sufficient that an adequate record existed from which the Court could discern the basis of the trial court's decision to grant the mistrial. *Id.* at 516–17, 98 S.Ct. at 835–36.