25 F.3d 1042
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Chorya A. STATON, Defendant-Appellant.
 No. 93-5561.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 9, 1994.
Decided May 31, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., Senior District Judge. (CR-93-49)
 James Orlando Broccoletti, Zoby & Broccoletti, Norfolk, Va., for appellant.
 Arenda L. Wright Allen, Asst. U.S. Atty., Norfolk, Va., for appellee.
 On Brief: Kimberly L. Shoemaker, Zoby & Broccoletti, Norfolk, Va.; Albert L. Fary, Jr., Albert L. Fary, Jr., P.C., Portsmouth, Va., for appellant.
 Helen F. Fahey, U.S. Atty., Norfolk, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before HAMILTON and WILLIAMS, Circuit Judges, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal presents only one issue: did the trial court err in finding that the prosecutor did not intentionally goad or provoke Defendant-Appellant Chorya A. Staton into moving for a mistrial, thus permitting his retrial in violation of the Fifth Amendment's Double Jeopardy Clause? For issues turning on factual controversy such as intentional prosecutorial provocation, the trial court's findings must be affirmed unless they are clearly erroneous. United States v. Wentz, 800 F.2d 1325, 1327 (4th Cir.1986). For the reasons given below, we now affirm.
 
 I.
 
 2
 Staton was arrested on February 27, 1993, as he was about to meet a DEA informant in a motel room to purchase 20 kilograms of cocaine. Following his arrest, officers searched the bag he carried with him to the room; in it they found $199,000. An inventory search of Staton's car conducted at DEA headquarters revealed, among other things, a loaded firearm under the driver's seat, and a bag containing 200 grams of heroin located in the trunk.
 
 
 3
 A grand jury subsequently indicted Staton on three charges: attempt to possess cocaine with intent to distribute; possession of heroin with intent to distribute; and possession of a firearm during and in relation to a drug trafficking offense. Several weeks before trial, the government moved to dismiss the cocaine possession charge due to insufficient evidence.
 
 
 4
 At trial, after jury selection but before opening statements, Staton filed a motion in limine to prevent the introduction of evidence concerning the events leading up to his arrest for attempted possession of cocaine. He argued that those facts constituted evidence of another crime not related to the charges on which he was to be tried. After considering the government's position that it should be permitted to give the historical background of the case, the court ruled that the evidence seized pursuant to the arrest was admissible, but any reference to the arrest itself was inadmissible.
 
 
 5
 MS. ALLEN [for the government]: So it is my understanding that the government would be able to introduce testimony concerning all items that were seized from the defendant, once he was arrested?
 
 
 6
 THE COURT: Well, you've got two questions there. First, can you say he was arrested? Secondly, can you say what was found on him? Now, let's see if we can clarify that. Which are you objecting to, Mr. Broccoletti?
 
 
 7
 MR. BROCCOLETTI [for the defendant]: I don't think that--if they just say he was arrested, I think the jury is going to wonder what he was arrested for,--
 
 
 8
 THE COURT: Right.
 
 
 9
 MR. BROCCOLETTI:--and I don't think that can come out.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 MS. ALLEN: So just to make sure that I understand the Court's order, I will just direct Agent Davis to say that he had reason to believe that the defendant might want to go to a hotel and elicit from him--
 
 
 13
 THE COURT: I don't think he has to say anything except that--
 
 
 14
 MS. ALLEN: He was arrested--
 
 
 15
 THE COURT:--except that "On such and such a day we searched his car and we searched his person and this is what we found."
 
 
 16
 MS. ALLEN: All right. Thank you, Your Honor.
 
 
 17
 (J.A. at 22, 26.)
 
 
 18
 In its opening statement, the government used the word "arrest" ten times, seven of which were specifically in reference to Staton's arrest. Staton did not object at any point during the prosecutor's statement, nor did the court interrupt to admonish the prosecutor for violating its ruling. At the end of the statement, Staton moved for a mistrial, which the court granted.
 
 
 19
 MR. BROCCOLETTI: I have a motion for a mistrial. The Court ruled that she was not to talk about the defendant being arrested. Even, I think Miss Allen agreed that the defendant was arrested. She didn't say arrested for what. The jury is going to wonder why. I counted four times during her opening statement when she said the defendant had been arrested.
 
 
 20
 THE COURT: That's exactly right. I told you not to say anything about his being arrested; it wasn't necessary, just found it on him, and we discussed the fact that if you talked about him being arrested, that would raise a question for the jury that couldn't be answered. All right. I grant the mistrial.
 
 
 21
 (J.A. at 42-43.)
 
 
 22
 One month later, the government reindicted Staton on the two charges for which he went to trial and on the cocaine charge which had been previously dismissed. Staton then filed a motion to dismiss the heroin and firearms charges.
 
 
 23
 At a hearing on the motion, Staton argued that at the trial the government intentionally goaded the defense into seeking a mistrial and that therefore, because of its actions, it was barred from prosecuting him again on those charges. In support of its position, the defense noted that immediately after the court ruled that the government could not refer to the defendant's arrest, the government referred to the arrest numerous times in its opening statement. In addition, the government reindicted Staton on all three of the original counts after the mistrial was granted. Further, the government attorney told one of the defense attorneys that she reindicted Staton in order to get around the court's ruling that prohibited her from mentioning the arrest, which she then admitted to the judge:
 
 
 24
 THE COURT: Why did you reindict him?
 
 
 25
 MS. ALLEN: Because, Your Honor, for me to tell a jury in this day and age that you are going through someone's car, you are going through someone's pockets, you are inventorying their car, they are going to be wondering why, and I don't care whether he is--
 
 
 26
 THE COURT: That's exactly what you indicated to Mr. Fary on the phone.
 
 
 27
 MS. ALLEN: I don't--
 
 
 28
 THE COURT: That you did it to get around my ruling.
 
 
 29
 MS. ALLEN: Your Honor--
 
 
 30
 THE COURT: And you are saying that right now.
 
 
 31
 MS. ALLEN: Your Honor, I'm trying to paint a full picture for the jury. We are after truth here, and whether it's--
 
 
 32
 THE COURT: What you are trying to do is you are trying to put in evidence that I ruled out at the last trial by reindicting it, and you have just admitted that. Right?
 
 
 33
 MS. ALLEN: Yeah, but that's not--that's not why the mistrial was granted.
 
 
 34
 (J.A. at 73-74.)
 
 
 35
 In turn, the government contended that its reference to Staton's arrest in opening statement was a result of a misunderstanding of the court's ruling and not an intentional act to provoke a mistrial:
 
 
 36
 MS. ALLEN: If you look at the transcript, it is still not clear in my mind that you told me not to say the word "arrest," and if you look--
 
 
 37
 THE COURT: That was the whole purpose of the dialogue before the court, and I don't see how--I gave you explicit instructions that you could say that you searched him.
 
 
 38
 * * *
 
 
 39
 * * *
 
 
 40
 MS. ALLEN: Well, I do, I admit--Your Honor, I didn't object to your ruling. Mr. Broccoletti objected to your ruling, and I didn't understand your ruling. I thought that I was allowed to say anything from the arrest thereafter, as opposed to the arrest prior to. That was my understanding of the court's ruling. And it would have been ridiculous for me to get up there and say ten times "arrest," if you had said, Ms. Allen, don't say "arrest."
 
 
 41
 THE COURT: Unless you were trying to do exactly what they claim you are trying to do, and that is trigger a mistrial.
 
 
 42
 (J.A. at 70-71.)
 
 
 43
 The government further represented that it had dropped the cocaine charge initially because the prosecutor could not bring a key informant to Norfolk and therefore, it believed that there was insufficient evidence to support the charge. In response, the court observed:
 
 
 44
 But I have gotten two different reasons from you about why it was dismissed, and I don't know which one to believe. One of them, you say, was because you didn't have enough evidence, and I understand you represented that to the court when you dismissed it. Now you say it is because the New York DA wanted to hide his [the key witness's] identity.
 
 
 45
 (J.A. at 72-73.)
 
 
 46
 The court concluded the hearing on the issue by stating:
 
 
 47
 It is very--I might say it is a very difficult matter for me. I certainly don't want to mistrust the motives of a United States attorney, but I have got to say that the repeated reference to the arrest and going into details about booking procedures and searches of automobiles and all of those things, on top of my ruling, but I think more particularly coming back with the reindictment on the first count and stating to Mr. Fary on the phone that you were doing it to get around my ruling, and then in effect denying it and admitting in the same argument here before me is very troubling to the court. But I want to think about it a little bit more.
 
 
 48
 (J.A. at 77.)
 
 
 49
 Notwithstanding its misgivings regarding the prosecutor's conduct, the court found in a written ruling issued the following day that the government did not intentionally provoke Staton into requesting a mistrial. The court noted that in other cases, courts have held that prosecutorial conduct more egregious than that involved in this case did not comprise intentional provocation or goading sufficient to prevent retrial and that even in cases involving flagrant prosecutorial misconduct, courts have ruled that the defendant was not provoked into requesting a mistrial. In contrast, the court considered the alleged prosecutorial misconduct at issue in this case to be much less severe.
 
 II.
 
 50
 In repeating the argument he presented to the trial court, Staton relies on Oregon v. Kennedy, 456 U.S. 667 (1982). In that case, the Supreme Court held that retrial of a defendant who requests a mistrial violates the Double Jeopardy Clause only when the prosecutor provoked or goaded the defendant into moving for mistrial with the intent to subvert the protections provided by the Clause. Id. at 676. Harassing or overreaching conduct does not suffice absent intent. Id. at 675-76. The burden of proof is on the defendant to show that the prosecutor intentionally provoked him. United States v. Borromeo, 954 F.2d 245, 247 (4th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 3012 (1992).
 
 
 51
 The circumstantial evidence of the prosecution's intent to force the defendant in this case to move for mistrial is strong. The Assistant United States Attorney ("AUSA") had a clear motive to provoke a mistrial, as the court had just ruled against her on what she apparently believed was an important part of her case. She acted immediately, and directly contrary, to the court's ruling. When the judge granted the mistrial, the AUSA did not object, much less object as vigorously as she should have if she did not want a mistrial. (Likewise, she did not object to the ruling, violation of which gave rise to the mistrial.) Cf. United States v. GAF Corp., 884 F.2d 670 (2d Cir.1989) (finding no provocation where government suggested at least four ways to avoid mistrial and objected when a mistrial was granted). Further, the government took advantage of the grant of a mistrial by reindicting Staton on the cocaine charge, reference to which the judge had ruled could not be made at the first trial. Finally, the AUSA admitted to the court that she reindicted Staton at least in part in order to get around its earlier ruling.
 
 
 52
 With this evidence before it, the district court nonetheless determined that the AUSA did not act intentionally in causing Staton to request a mistrial:
 
 
 53
 The AUSA has represented to the Court that the mention of arrest was due to her misunderstanding of the Court's order. At the time the motion for mistrial was made, the record indicates the Court agreed with this. At the hearing on the motion, the AUSA stated that she understood the Court's ruling to be that testimony of what occurred after the arrest could be mentioned. She mentioned the arrest (on Count I) only to inform the jury as to the events leading up to the inventory search (basis of Counts II & III). She further represented that Count I was initially dropped because she could not bring a key informant to Norfolk; therefore she believed there was insufficient evidence to support Count I. Upon the informant's availability, Defendant was reindicted on Count I.
 
 
 54
 United States v. Staton, Criminal No. 93-49-N, at 6 (E.D. Va. July 8, 1993) (order denying defendant's motion to dismiss Counts II and III).
 
 
 55
 In sum, these facts present a close case that comes down to a determination of the credibility of the AUSA. In light of the fact that the trial judge was familiar with the events leading to Staton's motion for a mistrial and the fact that the judge "was uniquely positioned to characterize the conduct of the government," this court cannot say on review that the district court's findings were clearly incorrect. United States v. Wentz, 800 F.2d 1325, 1328 (4th Cir.1986).
 
 
 56
 Our conclusion, like that of the district court, is further substantiated by the caselaw. In finding that the government's conduct did not amount to intentional provocation, the district court relied on two decisions of this court in which the misconduct at issue was clearly more impermissible and more prejudicial to the defendant than that presented here, but nonetheless not so egregious as to bar retrial. In United States v. Borromeo, 954 F.2d 245, 247 (4th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 3012 (1992), we found that the prosecutor's introduction of suppressed evidence at the end of its case was not intended to provoke a mistrial, even though the government purportedly gained a de facto continuance necessitated by the unavailability of its expert witnesses. Similarly, in United States v. Wentz, 800 F.2d at 1327-28, we affirmed the trial court's ruling that the government's introduction of evidence beyond the scope of the indictment resulted either from its negligence or its ignorance, not from any bad faith on its part.*
 
 III.
 
 57
 The district court found the prosecutor's comments and actions very troubling, a finding with which this court is in full agreement. Nevertheless, because the district court's findings of fact are not clearly erroneous and are further supported by precedent within this Circuit, the district court's ruling denying Defendant-Appellant Staton's motion to dismiss will be affirmed.
 
 AFFIRMED
 
 
 *
 The Fourth Circuit case relied upon by Staton in support of his position is inapposite to the issue presented. Although this court deemed the prosecutorial misconduct involved in United States v. Mitchell, 1 F.3d 235 (4th Cir.1993), to be so egregious as to warrant a new trial even under the stringent plain error standard, the case is procedurally distinguishable because it concerned a request to undergo, not to avoid, a second trial. We will not decide at this time if the conduct involved in Mitchell would satisfy the strict standard spelled out in Kennedy
 As well, the relevant cases relied upon by Staton decided by other courts, like the cases reviewed by the district court, involve more reprehensible conduct. See United States v. Kessler, 530 F.2d 1246 (5th Cir.1976); United States v. Broderick, 425 F.Supp. 93 (S.D. Fla.1977). Further, both of these cases were decided several years before Kennedy; it is questionable whether the conduct at issue in them would pass that decision's narrow test.