DECISION.
{¶ 1} Following a jury trial, the Hamilton County Court of Common Pleas convicted defendant-appellant Alexander Tobert of aggravated burglary in violation of R.C. 2911.11(A)(1), three counts of kidnapping in violation of R.C. 2905.01(A)(2), and the four accompanying firearm specifications. Asserting five assignments of error, Tobert timely appeals this judgment. For the following reasons, we affirm the judgment subject to a modification in the sentence.
{¶ 2} On the afternoon of Friday, November 19, 1999, Nancy and James Freeman were sitting in the living room of their Saylor Park home and visiting with Mrs. Freeman's daughter, Kari Patrick, who was celebrating her twenty- first birthday. It was also payday for Mr. Freeman's roofing-company employees. It was Mr. Freeman's practice to leave the back door of his house unlocked so that each employee could enter and then be paid in cash. In preparation for payday, Mr. Freeman had placed $11,000 in a safe located in the closet of an upstairs bedroom.
{¶ 3} According to the record, at 3:00 p.m., a man, later identified as Tobert, entered the Freemans' home and at gunpoint demanded to be taken to the safe. Neither the Freemans nor Patrick recognized Tobert. According to the victims, Tobert was dressed in khaki pants and a dark bubble coat, and he carried a silver handgun. Because Tobert did not wear a mask, the victims were able to describe Tobert's appearance to the police. They described him as a light- skinned African-American with a "fade" hairstyle very short on the sides and back, but longer on top.
{¶ 4} At trial, the victims testified that Tobert had apologized for intruding and had stated that "the house was supposed to [have been] empty." Eventually, he ordered the victims to lead him to the safe and to open it. After he had stolen the money from the safe and Mrs. Freeman's jewelry, he locked the three victims in the bedroom and fled. The victims were able to escape from the room and summon the police.
{¶ 5} No arrest was made in connection with the burglary until January 2001. Prior to that time, the victims met with Officer Gregory Hill. Officer Hill testified that, based upon information supplied mainly by Mr. Freeman, he had been able to prepare a composite drawing of the suspect.
{¶ 6} Specialist Frank Milano was assigned to investigate the case. During the two months prior to Tobert's arrest, Milano had prepared four photo arrays, with each array consisting of six photos. The arrays had been shown to each of the victims, privately, and each victim had failed to identify a suspect. But in January 2001, Milano had presented to each victim, out of the presence of the other victims, a fifth photo array that contained Tobert's photograph. Each of the victims selected Tobert's photograph as the one that depicted the man who had robbed them.
{¶ 7} At trial, Tobert presented alibi evidence from his mother, Valerie Tobert. She testified that Tobert had been with her the day of the burglary, running errands, including paying her cable bill. Two Hamilton County probation officers also testified on Tobert's behalf. They both stated that Tobert had been assigned to their charge during the time of the Freeman burglary, and, at that time, they had never known Tobert to wear his hair in a "fade" style. But Tobert's aunt testified that Tobert had worn his hair, at some point, in such a style.
{¶ 8} Prior to closing arguments, the court admitted into evidence the five photo arrays, but ruled that the jury could not view them until indications that the photographs were "mug shots" had been eliminated; i.e., the height bars in the photographs had to be removed. Nevertheless, during the state's closing argument, the prosecutor handed the jury the photo arrays that still contained the height bars. Tobert's defense counsel moved for a mistrial, and the court granted the motion.
{¶ 9} Subsequently, Tobert moved to dismiss the state's complaint on the ground that the Double Jeopardy Clause of the Fifth Amendment, as made applicable to the states by the Fourteenth Amendment, barred further prosecution. The court held a hearing and determined that the prosecutor had unintentionally showed the flawed photo arrays to the jury. Accordingly, the trial court denied Tobert's motion.
{¶ 10} During the second trial, the state used the same evidence presented in the first trial. But Tobert altered his defense in two ways: first, Tobert's aunt did not testify, and, second, an employee of Time Warner Cable testified that Tobert's mother's cable bill had been paid on the afternoon of the burglary. The jury returned a guilty verdict, and Tobert was, accordingly, convicted of aggravated burglary, kidnapping and the accompanying firearm specifications.
{¶ 11} In his first assignment of error on appeal, Tobert now asserts that the trial court erred by imposing consecutive sentences for the firearm specifications. Tobert argues, and the state concedes, that it was error to impose consecutive sentences for the firearm specifications when the underlying offenses had been committed as part of the same act or transaction.[1] We agree. The first assignment of error is sustained.
{¶ 12} In his second assignment of error, Tobert asserts that his convictions for aggravated burglary and kidnapping, following the second trial, violated the double-jeopardy guarantees in the state and federal constitutions. We are unpersuaded.
{¶ 13} The general rule is that retrial is not barred when a criminal defendant requests a mistrial and it is granted on his behalf.[2] An exception to the rule exists when "governmental actions [are] intended to provoke mistrial requests and thereby * * * subject defendants to the substantial burdens imposed by multiple prosecution[s]."[3] Prosecutorial misconduct will bar a second trial when such behavior is "intentionally" calculated to cause or to goad the defendant into requesting a mistrial.[4]
If the prosecutorial misconduct is unintentional, then the critical inquiry in determining whether to bar a second trial is whether the mistrial has impaired the defendant's opportunity for acquittal or, in the alternative, whether the prosecution has gained any advantage.[5]
{¶ 14} An appellate court conducts a de novo review of a lower court's denial of a motion to dismiss an indictment on the grounds of double jeopardy.[6] At the same time, "a [trial] court's finding regarding the intent of a prosecutor to cause a mistrial is a finding of fact, and an appellate court will accord great deference to such finding, as the [trial] court is in the best position to observe the conduct in question in the context of the entire trial."[7]
{¶ 15} Tobert argued below that the prosecutor had realized that she was losing her case and thus intentionally had shown the jury the photographs containing the height bars in order to "goad" Tobert into requesting a mistrial. The trial court disagreed and found that the prosecutor's conduct may have been negligent, but that it was not intentional. We find nothing in the record to convince us that the trial court's finding was clearly erroneous. As the trial court was in the best position to observe the parties and their conduct, we will not disturb its finding that the prosecutor's conduct was unintentional.
{¶ 16} Thus, we now turn to whether the mistrial gave the prosecution an advantage at the second trial. Tobert argues that it did. We disagree. The state presented the same documentary evidence and testimony that it had used in the first trial. The defense was the party to change its strategy in an effort to bolster its case during the second trial. The defense chose not to call again a witness, Tobert's aunt, whose previous testimony may have harmed Tobert, and instead called a new witness, an employee of the cable company, to bolster Tobert's alibi that he had spent the day with his mother. Accordingly, the state did not gain any advantage from the mistrial. The second assignment of error is overruled.
{¶ 17} In his third assignment of error, Tobert asserts that he was denied the effective assistance of counsel. To establish ineffective assistance of counsel, there must be a showing that counsel's performance fell below an objective standard of reasonable representation and, in addition, that prejudice arose from counsel's performance.[8]
{¶ 18} Because the state's case against Tobert was based solely on eyewitness testimony, Tobert contends that it was necessary for his trial counsel to have called an expert to testify concerning the problems inherent in eyewitness identification. We disagree.
{¶ 19} Generally, the decision not to call an expert witness does not constitute ineffective assistance of counsel because that decision is solely a matter of trial strategy.[9] Recently, the Ohio Supreme Court adhered to this general rule when addressing a similar claim of ineffective assistance of counsel in State v. Madrigal.[10] There, the defendant's conviction for the aggravated murder of a restaurant employee was mainly the result of eyewitness identification testimony by customers and other employees. Although the evidence demonstrated that at the time of the murder the defendant had facial hair, none of the eyewitnesses had described that feature of the defendant. Nevertheless, the court held that it was not ineffective assistance of counsel to fail to call an expert concerning the unreliability of eyewitness identification because that decision was a matter of trial strategy.[11]
{¶ 20} Like counsel in Madrigal, Tobert's trial counsel chose the strategy of cross-examination, instead of calling an expert witness, to impeach the eyewitnesses' testimony. Under the circumstances of this case, where the victims reviewed several photo arrays over a period of two months and each victim immediately identified Tobert as the burglar upon seeing his picture in the final array, we choose not to second-guess trial counsel's strategy.
{¶ 21} Further, we note that resolving this issue in favor of Tobert would be purely speculative as there is no indication in the record as to what kind of testimony an expert could have provided. As theMadrigal court noted, "[E]stablishing [the kind of testimony the expert could have provided] would require proof outside the record, such as affidavits demonstrating the probable testimony. Such a claim is not appropriately considered on a direct appeal."[12] Accordingly, the third assignment of error is overruled.
{¶ 22} In his fourth assignment of error, Tobert contends that this court has erred in overruling his motion to remand his case to the trial court for an additional hearing on his original motion to dismiss. Tobert is not asking us to reconsider our decision overruling his motion for remand, but is assigning it as an error for our review. The Supreme Court of Ohio has jurisdiction to review assignments of error allegedly made by this appellate court.[13] We do not. Accordingly, we overrule the fourth assignment of error.
{¶ 23} In his fifth and final assignment of error, Tobert asserts that his convictions were against the weight of the evidence. To reverse on the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[14] Based upon our review of this record, we cannot say that the jury clearly lost is way, and thus Tobert's convictions did not give rise to a manifest miscarriage of justice. Accordingly, the fifth assignment of error is overruled.
{¶ 24} In sum, we affirm the judgment of the trial court with respect to the convictions for aggravated burglary and kidnapping, but modify the sentence on the firearm specifications so that they are to be served concurrently.
Judgment affirmed as modified.
Hildebrandt, P.J., Gorman and Painter, JJ.
[1] See R.C. 2929.14(D)(1)(b).
[2] State v. Doherty (1984), 20 Ohio App.3d 275, 276,485 N.E.2d 783.
[3] Id. at 276, 485 N.E.2d 783, citing United States v. Dintz (1976),424 U.S. 600, 611, 96 S.Ct. 1075.
[4] Id. at 276, 485 N.E.2d 783, citing Oregon v. Kennedy (1982),456 U.S. 667, 102 S.Ct. 2083.
[5] State v. Johnson (Feb. 24, 1988), 1st Dist. No. C-870124, citingState v. Montgomery (1982), 3 Ohio App.3d 280, 282, 445 N.E.2d 254.
[6] In re Ford, (C.A.6, 1992), 987 F.2d 334, 339.
[7] Oregon v. Kennedy (1982), 456 U.S. 667, 102 S.Ct. 2083; UnitedStates v. White (C.A.6, 1990), 914 F.2d 747, 752.
[8] Strickland v. Washington (1984), 446 U.S. 668, 687,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus.
[9] State v. Coleman (1989), 45 Ohio St.3d 298, 307-308,544 N.E.2d 622.
[10] 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52.
[11] Id. at ¶ 19-20.
[12] Id. at ¶ 20, citing State v. Keith (1997), 79 Ohio St.3d 514,536, 684 N.E.2d 47; State v. Scott (1989), 63 Ohio App.3d 304, 308,578 N.E.2d 841.
[13] See S.Ct.Prac.R. II(A)(3).
[14] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.