**UNITED STATES of America, Plaintiff,**

v.

**Homer Patrick WORKMAN, Defendant.**

**No. CRIM. 2:97–00184.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Jan. 16, 1998.

Monica K. Schwartz, Assistant U.S. Attorney, Charleston, WV, for plaintiff.

Jane Moran, Williamson, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant Homer Patrick Workman's motion to dismiss. After careful consideration, the Court **DENIES** Defendant's motion.

### I.  FACTUAL BACKGROUND

Defendant was indicted by the November 4, 1997 session of the federal grand jury at Huntington, West Virginia. He was charged with violating 18 U.S.C. §§ 2118(b) and 2. The indictment alleges that on or about May 9, 1994 in or near Man, West Virginia, Defendant, aided and abetted by other persons, entered the Community Prescription Center, Inc. intending to steal certain materials and compounds containing quantities of Schedule III and IV controlled substances, the replacement cost of which was in excess of $500.00.

Defendant seeks dismissal, arguing (1) Section 2118(b) is facially invalid because it exceeds the authority granted Congress under the Commerce Clause of the United States Constitution; (2) Section 2118(b) infringes on the police power of the State of West Virginia; and (3) there is no nexus between the commerce regulating power of Congress and the conduct sought to be controlled by Section 2118(b). All three arguments fail.

## II. DISCUSSION

Section 2118(b) provides as follows:

Whoever, without authority, enters or attempts to enter, or remains in, the business premises or property of a person registered with the Drug Enforcement Administration under Section 302 of the Controlled Substances Act (21 U.S.C. § 822) with the intent to steal any material or compound containing any quantity of a controlled substance shall, except as provided in subsection (c), be fined under this title or imprisoned not more than twenty years, or both, if (1) the replacement cost of the controlled substance to the registrant was not less than $500.00, (2) the person who engaged in such entry or attempted such entry or who remained in such premises or property traveled in interstate or foreign commerce or used any facility in interstate or foreign commerce to facilitate such entry or attempt or to facilitate remaining in such premises or property, or (3) another person was killed or suffered significant bodily injury as a result of such entry or attempt.

*Id.*

In *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Supreme Court held the Gun–Free School Zones Act of 1990 exceeded Congress' authority to legislate under the Commerce Clause. *Lopez* itself, however, recognized the Supreme Court has "upheld a wide variety of congressional acts regulating intrastate economic activity ...." *Id.* at 559; *see also United States v. Hartsell,* 127 F.3d 343, 348 n. 1 (4th Cir.1997) (stating "we do not agree that *Lopez* is a radical sea change which invalidates the decades of Commerce Clause analysis ...."); *Brzonkala v. Virginia Polytechnic Institute,* 132 F.3d 949, 967 (4th Cir.1997).

*Lopez* further observed the statute at issue was not "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id.* at 561. The defective statute also lacked a "jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* The court also noted the lack of congressional findings enabling the reviewer to evaluate the legislative judgment that the activity in question substantially affected interstate commerce. *Id.* at 563.

In *United States v. Leshuk,* 65 F.3d 1105 (4th Cir.1995), our Court of Appeals examined a defendant's *Lopez* challenge to 21 U.S.C. § 841(a)(1). Specifically, the defendant contended the Drug Act was unconstitutional because it regulated intrastate drug activities, such as marijuana manufacture, which did not substantially affect interstate commerce. The Court of Appeals disagreed:

In contrast to the firearm possession prohibited in the Gun Act [and at issue in *Lopez* ] the intrastate drug activities regulated in the Drug Act are clearly tied to interstate commerce. In passing the Drug Act, Congress made detailed findings that intrastate manufacture, distribution and possession of controlled substances, as a class of activities, "have a substantial and direct effect" upon interstate drug trafficking and that effective control of the interstate problems requires the regulation of both intrastate and interstate activities. *See* 21 U.S.C. § 801 (finding, *inter alia,* that "[i]ncidents of the [drug] traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce"). This court, as well as other courts, has relied upon these findings in concluding that Congress may regulate intrastate drug activities under the commerce clause.

65 F.3d at 1112.

The statute at issue here, referred to as the Controlled Substances Registrant Protection Act of 1984, was seen as an important adjunct in congressional attempts to regulate controlled substances:

The effective regulation of the commerce in controlled substances has resulted in very high prices for the drugs on the black market. As a consequence, theft of controlled substances from registrants has become a common yet serious problem. Although burglary and robbery of controlled

substance registrants declined in 1982, it has been extremely serious, with between 5,000 and 6,000 such crimes annually between 1977 and 1981.

*The frequency of these crimes has terrorized the community of dispensing pharmacists. Some pharmacists have ceased to carry drugs that are highly desired on the black market, although this interferes with their patients' ability to obtain necessary medicine. This has a serious potential to impede the delivery of health care in many communities around the nation.*

\*  \*  \*  \*  \*  \*

*Pharmacist Roland Galley testified on behalf of the American Pharmaceutical Association that the increasing incidence of pharmacy crimes has resulted in the closing of numerous pharmacies. "Truly, it is the community which also suffers, and this problem must be viewed not merely as a law enforcement problem but also as a real and substantial public health problem."*

H.R.Rep. No. 98–644 at 2, 3, 6 (1984) *reprinted in* 1984 U.S.C.C.A.N. 521, 521 (emphasis added).

Section 2118(b) easily clears the low *Lopez* bar for many reasons. First, the Court notes generally, as did the court in *Lopez*, the abundance of congressional acts which have been found to regulate validly intrastate economic activity. *See Hodel v. Virginia Surface Mining and Reclamation Ass'n, Inc.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (regulation of intrastate coal mining); *Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971) (intrastate

extortionate credit transactions); *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) (restaurants utilizing substantial interstate supplies); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (inns and hotels catering to interstate guests); *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (consumption of home grown wheat).

Second, Section 2118(b) can be said to form an essential part of a larger regulation of economic activity, namely the manufacture, distribution and possession of controlled substances, in which the overall regulatory scheme could be undercut unless the intrastate activity were regulated. One need not labor long on the congressional findings, findings absent in *Lopez*, to ascertain that (1) terrorization of dispensing pharmacists; (2) the removal of certain drugs from store shelves; (3) the closing of numerous pharmacies; and (4) the overall deleterious effects on the Nation's health care delivery system, all impact seriously the orderly regulation of commerce in controlled substances.

■ This Court is cognizant that "Congress may not ' "use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities." ' " *Hoffman v. Hunt*, 126 F.3d 575, 584 (4th Cir.1997) (quoting *Lopez*, 514 U.S. at 557).[1] As demonstrated *supra*, however, section 2118(b) was not promulgated in response to events of trivial impact on the Nation's controlled substances' market place. Accordingly, Defendant's *Lopez* challenge to

---

1. The $500.00 jurisdictional amount element in Section 2118(b) is a further assurance Congress carefully crafted its further presence into controlled substances regulation. The jurisdictional element reassures a reviewing court that (1) trivial prosecution; (2) unnecessary interference with state police power; and (3) Commerce Clause overreaching, will not occur.

In a similar prosecution under 18 U.S.C. § 2311, which criminalizes the transport of stolen property having a value of at least $5,000.00, the Court of Appeals stated in *U.S. v. Wentz*, 800 F.2d 1325, 1326 (4th Cir.1986), as follows:

The jurisdictional amount requirement in the statute has two purposes. First, it limits feder-

al jurisdiction to "interstate transportation of stolen goods having substantial value." Second, it prevents "overtaxing the resources of the Department of Justice." Cases involving stolen property of less value remain the responsibility of the states.

*Id.* (citations omitted); *see also U.S. v. Grenagle*, 588 F.2d 87, 88 (4th Cir.1978) (stating "the Congress determined that it was appropriate to engage federal prosecutorial and judicial resources when stolen goods having a value of more than $5,000.00 was [sic] transported in interstate commerce leaving to the states the prosecution of thefts when the value of the goods transported was $5,000.00 or less").

Section 2118(b) fails.[2] The motion to dismiss is DENIED.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel, the Marshal for the District and the Probation Office of this Court.

---

**2.** The Court has examined Defendant's remaining arguments for dismissal and concludes they are without merit.

For instance, the fact that a conviction can occur under Section 2118(b) without proof of the traditionally framed interstate commerce jurisdictional element is of no moment in a *Lopez* inquiry. Our Court of Appeals clarified the issues just days ago:

> *Lopez* does not require that a statute contain a jurisdictional limit in order to pass Commerce Clause scrutiny. "If a jurisdictional element were critical to a statute's constitutionality, the court in *Lopez* would not have gone on to examine the government's proffered rationales for the constitutionality of the gun possession statute."

> The core teaching of *Lopez* is simply that Congress must insure that legislation enacted pursuant to its Commerce Clause authority reaches only activities that "substantially affect interstate commerce." A jurisdictional element of congressional findings assist the court in determining whether a regulated activity substantially affects interstate commerce, *but neither is necessary for constitutional validity.*

*Brzonkala,* 132 F.3d at 972. The foregoing textual discussion settles the core issue in this case: Congress had a rational basis to conclude that certain thefts of controlled substances from pharmacies have a substantial effect on interstate commerce.