TJOFLAT, Circuit Judge,
dissenting, in which BIRCH and HILL, Circuit Judges, join:
The court holds that 18 U.S.C. § 247, which provides that “[w]hoever ... intentionally defaces, damages, or destroys any religious real property, because of the religious character of that property, or attempts to do so ... shall be punished” if “the offense is in or affects interstate or foreign commerce,” reaches a purely local church arson so long as the arsonist crossed state lines prior to the offense. In other words, the earlier travel places the offense itself “in ... interstate ... commerce.” Because I believe that a church arson is not “in commerce” simply because the offender traveled from another state sometime prior to the offense and, moreover, that so interpreted the statute exceeds Congress’s authority under the Commerce Clause, I respectfully dissent. I agree with much of what is said in the dissents Judges Hill and Birch have filed and write separately only to emphasize a few points.
I.
When Congress seeks to rely on interstate travel as a basis for exercising its authority under the Commerce Clause, it knows how to do so. As the panel majority noted, “[t]here are numerous federal statutes which do, explicitly, forbid movement in interstate commerce in order to commit a traditional common-law crime.” United States v. Ballinger, 312 F.3d 1264, 1273 n. 8 (11th Cir.2002) (collecting statutes). And more important for present purposes, prior to its amendment in 1996, § 247 itself reached cases in which, “in committing the offense, the defendant travels in interstate or foreign commerce, or uses a facility or instrumentality of interstate or foreign commerce in interstate or foreign commerce.” In 1996, this provision was deleted and replaced with the current § 247(b), which extends only to cases in which “the offense is in or affects interstate or foreign commerce.”
The court, however, now reads the old interstate travel provision back into the statute, as if the 1996 amendment had never occurred, despite the fact that it is unable to cite a single case that holds that an offense is “in commerce” simply because the offender crossed state lines at some point prior to its commission. In reaching this conclusion, the court makes much of the narrowness of the contrary interpretation urged by the appellant and relies on the principle that, whenever possible, a statute should be read in a way that gives effect to all of its words. Indeed, the court faults the appellant for failing to identify satisfactorily those offenses other than his own that might be considered “in commerce.” Ante, at 1231. I am uncertain what, if any, church arson might be “in commerce.” It is, however, clear to me that a church arson is not “in commerce” simply because the arsonist came from another state at some point prior to the offense. The rule that statutes should be read so as not to render words insignificant is a general principle of statutory interpretation, not an inflexible *1244 rule.[1] Therefore, we need not do violence to the statutory language simply to satisfy ourselves that we have given all the words of § 247 a function. The court says that “Congress does not write statutes for the words — it writes them for the meaning.” Ante, at 1237. The court, in turn, has applied § 247’s (perceived) meaning rather than its words.
II.
I agree fully with the court that the “congressional, power to regulate the channels and instrumentalities of commerce includes the power to prohibit their use for harmful purposes, even if the targeted harm occurs outside the flow of commerce and is purely local in nature.” Ante, at 1226. That congressional power, however, is not implicated by this case. Rather, the court has interpreted § 247 to reach a crime that is purely local in nature simply because the defendant crossed state lines prior to its commission. Thus, what the court interprets the statute to regulate is the purely local intrastate, crime, not the use of the channels and instrumentalities of commerce for a harmful purpose.
In its opinion, the court cites a number of federal criminal statutes that criminalize interstate travel for illicit purposes, as well as several early Supreme Court cases upholding such statutes. Ante, at 1229 & n. 6. Those statutes, however, are unlike § 247 because they do in fact regulate the channels and instrumentalities of commerce.[2] Under such statutes, the offender commits a crime as soon as he begins *1245 travel in interstate commerce for the harmful purpose because that is precisely what is made criminal — the movement in commerce for the harmful purpose. In those cases, the use of the channels of commerce and the offense itself are inextricably intertwined, and -Congress has properly regulated the channels and in-strumentalities of interstate commerce. Here, in contrast, there is no suggestion that § 247 criminalizes mere travel with the unlawful purpose or regulates, for example, the interstate transportation of persons for the purpose of committing church arson. . Rather, the statute unambiguously regulates the purely local defacement or destruction of religious real property itself. This distinction does not, as the court contends, “conflate[ ] the constitutional question with the statutory interpretation question.” Ante, at 1230. Indeed, the Supreme Court acknowledged this very difference in Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917):
It may be conceded, for the purpose of the argument, that Congress has no power to punish one who travels in interstate commerce merely because he has the intention of committing an illegal or immoral act at the conclusion of the journey. But this act is not concerned with such instances. It seeks to reach and punish the movement in interstate commerce of women and girls with a view to the accomplishment of the unlawful purposes prohibited.
Id. at 491, 37 S.Ct. at 197. This statement, which only assumes the point for the sake of argument, does not, of course, conclusively establish that the court’s interpretation of § 247 is beyond Congress’s commerce power. But it does demonstrate that there is a difference between this case and the cases on which the court relies and, further, that the constitutional issue cannot be resolved simply by way of citations to those cases. And once it is seen that this case is not controlled by those precedents, it also becomes clear that the court’s interpretation of § 247 is unconstitutional under United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Because the court’s reading of § 247 regulates a purely local crime rather than the use of the channels or instrumentalities of commerce, it cannot be sustained as an exercise of Congress’s “Lopez 1” or “Lopez 2” powers. Nor, as the panel majority in this case has already demonstrated, can it be sustained under “Lopez 3.” Ballinger, 312 F.3d at 1268-76.
III.
My final quarrel with the majority opinion is that its ultimate holding is obscure. As I have explained, I do not understand the court’s decision to hinge on a determination that Ballinger actually crossed state lines with the intent to burn churches; rather, I take the court to hold that § 247 reaches Ballinger’s conduct simply because he crossed state lines at some point not too *1246 long before committing the arson. If this is truly the holding of this case, then the obvious follow-up question is how closely connected the border crossing and the arson must be for § 247 to apply. Ballinger, of course, began burning churches in Georgia soon after arriving there, so this is, for the court, an easy case. But would § 247 still apply if he had waited a week? What about a month? Or what if Ballinger had actually moved to Georgia, established a permanent residence, and then several months or even years later committed the arson? I think it is likely that the court would draw a line somewhere along this continuum, but I am not at all sure where it would be. Nor can I imagine from whence such a rale would come, other than maybe our own good judgment. Since there is no basis in the text of the statute itself for such a rule, it — like the court’s interstate travel jurisdictional hook — ■ would have to be created out of whole cloth. If this is what the court means to hold, it would be better to say so clearly and to go ahead and write the rule into the statute now so as to at least give the district courts and the Government some guidance going forward. Instead, the court vaguely holds that § 247 applies whenever the arsonist crosses state lines at some point prior to the offense. How close in time the border crossing and the arson must be is a question that we apparently leave for another day. Thus, although the court is willing to hold that § 247 contains a jurisdictional hook that, on its face, it quite plainly does not, it is unwilling to say exactly what that jurisdictional hook is.
It is possible, however, that I have misread the court’s opinion. At the outset of the opinion, for example, the court does state that Ballinger “cross[ed] the borders of four states for the purpose of burning churches.” Ante, at 1222. And later on, the court states that Ballinger made “at least six separate border crossings, all for the specific purpose of spreading the evil of church burning through four different states,” and, quoting the panel dissent, that “the immediacy with which he set out to burn churches once he arrived and the absence of any indication that he had other business in Georgia demonstrate that he used the channels for the purpose of committing arson.” Ante, at 1228 (quoting Ballinger, 312 F.3d at 1278 (Hall, J., dissenting)).
Does this mean that the court does, in fact, hold that § 247 applies only when the defendant actually traveled in interstate commerce with the intent to commit church arson — i.e., that mere proof of travel and a subsequent arson is insufficient? If so, then I think that the court has two problems. First, there is again nothing in the text of the statute to support such a reading. Of course, a lack of textual support will plague any interpretation of § 247 that reaches Ballinger’s conduct, so I will move on to the second problem with this potential holding: neither the facts charged in the indictment nor those to which Ballinger stipulated as part of his plea agreement support a finding that he actually crossed state lines with the intent to burn churches. The indictment merely tracks the statutory language, charging that the arson was committed “under circumstances such that [it] was in and affecting interstate commerce.” Moreover, Bal-linger stipulated that he and his girlfriend left Indiana “partly out of concern about a call by an FBI agent to Ballinger’s parent’s home in Indiana.” He also stipulated that he did not purchase the gasoline used in the Georgia fires until he was actually in Georgia. Nowhere does he specifically admit that he crossed state lines with the intent to burn churches or traveled for that specific purpose. Thus, if the court has in fact rewritten § 247 to make interstate travel with the intent to commit church arson an element of the offense, *1247 then the conviction should be vacated because there is no evidence in the record of such an intent. See, e.g., United States v. Gamboa, 166 F.3d 1327, 1331 n. 4 (11th Cir.1999) (“A court cannot accept a guilty plea unless it is satisfied that the conduct to which the defendant admits constitutes the offense charged.”); United States v. White, 258 F.3d 374, 380 (5th Cir.2001) (“notwithstanding an unconditional plea of guilty, we will reverse on direct appeal where the factual basis for the' plea as shown of record fails to establish ah element of the offense of conviction”).[3]
To reiterate, I do not think this shortcoming really matters to the court’s holding, as I understand the holding to be that the crime is the church arson and that the prior border crossing is a sufficient jurisdictional hook whether intent was present during that interstate travel or not. Indeed, the very fact that the court has rendered this point a nonissue underscores the difference between federal statutes that criminalize, interstate travel for an illicit purpose and the statute we address here. If § 247 actually targeted interstate travel with the intent to commit church arson, it would probably be constitutional, and we would have to decide whether the stipulated factual basis for the plea is sufficient to establish intent and thus to sustain the conviction. But such a reading of the statute would lack even the faintest basis in its text, and I do not think that it is the interpretation that the majority adopts. I mention the possibility only because the court’s opinion is less than clear on this point, and if I am wrong and this is the court’s interpretation of the statute, then the court should at least explain its basis for concluding that Ballinger actually crossed state lines with the intent to commit church arson. ,
My confusion as to the holding of this case can be summarized in a few short *1248 questions that the court seems to leave unanswered: First, under the court’s interpretation of § 247, is it necessary to prove that the defendant traveled in interstate commerce with the intent to commit church arson? I think the court would answer, “no.” If that is the ease, then how close in time must the border crossing and the arson be for § 247 to apply? (And, as a matter of statutory interpretation, how are we to decide where to draw the line?) If, however, the court would answer my first question in the affirmative, what basis is there for concluding that Ballinger crossed state lines with the intent to commit church arson? Because all of these points remain unclear, the court’s opinion remains unsatisfactory even if I assume that it reaches the correct result. Once these ambiguities are cleared away, we are again left with purely intrastate offenses and a federal prosecution of them that hangs solely on the offender’s earlier crossing from one state into another. As such, the court’s discussion of Ballinger’s highway travels, gasoline purchases, and hotel stays, and its citations to cases sustaining convictions where the federal crime was the interstate travel itself, are simply irrelevant and serve only to obscure the real issue and to create an illusion of a connection to interstate commerce that simply does not exist in fact.
IV.
Because § 247 cannot properly be interpreted to reach Ballinger’s conduct, and because it would be unconstitutional even if it could, I respectfully dissent.

. The court itself quotes cases stating that every word should be given effect "if possible” or "wherever possible” or that the Supreme Court was "reluctant to treat statutory terms as surplusage.” Ante, at 1237.

. In note 7 of the opinion, the court contends that 18 U.S.C. § 2118(a) is like § 2471' Section 2118(a) provides:
Whoever takes or attempts to take from the person or presence of another by force or violence or by intimidation any material or compound containing any ¡quantity of a controlled substance belonging to or in the care, custody, control, or possession of a person registered with the Drug Enforcement Administration under section 302 of the Controlled Substances Act (21 U.S.C. 822) shall ... be fined under this title or imprisoned not more than twenty years, or both, if (1) the replacement cost of the material or compound to the registrant was not less than $500, (2) the person who engaged in such taking or attempted such taking traveled in interstate or foreign commerce or used any facility in interstate or foreign commerce to facilitate such taking or attempt, or (3) another person was killed or suffered significant bodily injury as a result of such taking or attempt.
This statute is valid, however, not because of the interstate travel provision, but rather because it "form[s] an essential part of a larger regulation of economic activity, namely the manufacture, distribution and possession of controlled substances, in which the overall regulatory scheme could be undercut unless the intrastate activity were regulated.” United States v. Workman, 990 F.Supp. 473, 475 (S.D.W.Va.1998) (upholding § 2118(b), which criminalizes entering or attempting to enter the premises or property of a person registered with the DEA with the intent to steal a controlled substance). Moreover, the statute itself indicates that the interstate travel provision is not relied upon to establish jurisdiction under the Commerce Clause, for even where no interstate travel is involved the statute reaches cases in which the controlled substance taken was worth at least $500 or another person was killed or seriously injured in the course of the crime.
Similarly, the other two statutes discussed in note 7 of the court's opinion, 21 U.S.C. § 331 (k), which criminalizes the adulteration or misbranding of any article subject to FDA regulation "while such article is held for sale ... after shipment in interstate commerce,” and the old felon-in-possession statute addressed in Scarborough v. United States, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), which made it a crime for a felon to "possessO or transporto in commerce or affecting commerce, ... any firearm,” are within Congress’s commerce power because they are part of a larger regulation of economic activity, namely, the regulation of drugs, etc. in one case, and the regulation of guns, etc. in the other. See United States v. Sullivan, 332 *1245 U.S. 689, 698, 68 S.Ct. 331, 336, 92 L.Ed. 297 (1948) (upholding the FDA provision as a valid exercise of "the constitutional power of Congress under the commerce clause to regulate the branding of articles that have completed an interstate shipment and are being held for future sales in purely local or intrastate commerce” (citing, inter alia, Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942))); Scarborough, 431 U.S. at 576, 97 S.Ct. at 1969 (1977) (reasoning that a narrower interpretation of "in commerce or affecting commerce” would "create serious loopholes in the congressional plan”). Thus, the court’s reliance oil Scarborough and progeny is misplaced, as Congress’s authority to regulate the possession of guns is part of its larger authority to regulate the sale, distribution, and possession of guns — an economic activity — and the statute refers not only to possession "in commerce,” but also to possession "affecting commerce.”

. On appeal, Ballinger does not specifically argue that his conviction should be vacated on this ground. This is understandable. In the part of its opinion holding that the charged offenses "occurred in interstate commerce,” the district court stated the following:
[D]efendant traveled through Indiana, Kentucky, and Tennessee on his way to Georgia and then back through Kentucky thereafter. Defendant utilized interstate highways, gas stations, hotels, and supplies and made various purchases in interstate commerce to prepare for and accomplish a multi-state arson campaign that ultimately targeted eleven churches in four different states. Although defendant's crimes in Indiana, Kentucky, and Tennessee are not presently before this court, the stipulated factual basis illustrates that these transactionally-related offenses constitute part of a larger campaign which may be fairly characterized as an "offense ... in or affect[ing] interstate or foreign commerce.” 18 U.S.C. § 247(b). This court is satisfied that on these grounds alone, defendant’s § 247 prosecution is constitutionally permissible.
The district court did not rest its determination that the offenses occurred "in corn-merce” on any .determination that Ballinger actually entered Georgia with the intent of burning churches. Rather, the district court held that the border crossing by itself placed the subsequent offense "in commerce” without regard to intent. If the majority's interpretation of § 247 does, in fact, require a showing of such an intent — and, again, my impression is that it does not — then it differs significantly from the "in commerce” theory of the conviction the district court adopted. Cf. Appellant's En Banc Brief, at 29 ("In its Petition for En Banc Consideration, the government contended that § 247 is satisfied when a defendant travels across state lines at some unnamed point prior to committing the offense.”), 34 ("The government never answers the question of ... how far in time this line crossing would continue [to satisfy the requirement that the offense be 'in commerce'].”). It is, therefore, of no moment that Ballinger has not specifically argued the point on appeal; if we are to create a new theory of the conviction on appeal, we must at least ascertain whether the factual basis for the guilty plea in fact supports that theory.