**Aman ABDI, Petitioner-Appellee,**

v.

**The STATE OF GEORGIA, by Its Agents and Officers, et al., Respondents-Appellants.**

**No. 83–8865.**

United States Court of Appeals, Eleventh Circuit.

Oct. 26, 1984.

Rehearing and Rehearing En Banc Denied Nov. 29, 1984.

Benjamin H. Oehlert, III, Atlanta, Ga., for respondents-appellants.

Robert Altman, Federal Defender Program, Inc., John Oliver Ellis, Jr., Suzanne Hashimi, Atlanta, Ga., for petitioner-appellee.

Before FAY and JOHNSON, Circuit Judges, and YOUNG *, District Judge.

JOHNSON, Circuit Judge:

Aman Abdi sought federal habeas corpus relief in the district court for the Northern District of Georgia, asking that the court prevent the state of Georgia from prosecuting him for räpe. He asserted that during an earlier trial for the same offense the state trial court had improperly granted a mistrial, and contended that a new trial

---

* Honorable George C. Young, U.S. District Judge for the Middle District of Florida, sitting by designation.

would subject him to double jeopardy. The federal district court agreed with Abdi and granted relief. We find that the state trial court properly exercised its discretion in declaring a mistrial on the basis of manifest necessity, and for that reason we reverse the judgment below.

The state of Georgia brought Aman Abdi to trial in the Superior Court of Fulton County on a charge of rape. The first witness in the trial was the alleged victim. During cross-examination, defense counsel pointed out several inconsistencies in her testimony; the examination culminated in a question by defense counsel concerning the past sexual behavior of the victim.[1] At this point the prosecutor objected and asked to make a motion outside the presence of the jury. The court did send the jury to the jury room, whereupon the prosecutor objected that the question violated the Georgia rape "shield" law and was improper. That statute, O.C.G.A. § 24–2–3 (Michie 1982), forbids the admission into evidence in a rape trial of any information relating to the past sexual behavior of the complaining witness.[2]

The trial judge asked the prosecutor if he was requesting a mistrial and the prosecutor replied that he was not. He only wanted the court to instruct the defense attorney not to question the witness about such matters. The trial court nevertheless declared a mistrial on its own motion and gave the following explanation:

> Counsel [speaking to defense counsel], that is highly improper and I will tell you the Court is going to declare a mistrial in this case. I don't want this jury to pass on a case with that sort of evidence before them. The Court can declare a mistrial on its own motion, and I am going to do that.

Bring the jury in.

[Whereupon, the jury entered the jury box.]

THE COURT: Members of the jury, just before you retired the [defense attorney asked a question that was] highly improper. We have what is known in Georgia as a shield law and any past sexual acts, that is, sexual intercourse, by the alleged victim, if it ever occurred, is not admissible. It's just barred by law, and the Court on its own motion, is going to declare a mistrial and not let this case go any further.

You are excused.

Abdi was brought to trial again in Superior Court, at which time he filed a plea of former jeopardy. That court sustained the plea, holding that the first trial had been improperly terminated without the defendant's consent. The Georgia Court of Appeals reversed because it found the declaration of a mistrial to be proper, 162 Ga. App. 20, 288 S.E.2d 772 (1982), and the Georgia Supreme Court upheld this ruling. 249 Ga. 827, 294 S.E.2d 506 (1982).

Before the second trial could begin, however, Abdi filed this habeas corpus petition in the federal district court. The district court granted relief because it found no "manifest necessity" for the mistrial after a review of the record. Instead, the record revealed that the state trial court had acted "abruptly and precipitately" in declaring a mistrial. Consequently, the double jeopardy provision of the Fifth Amendment prevented the second trial of Abdi.

■ We must keep in mind in deciding this case that Abdi has a valued right to have his trial completed by a particular tribunal. *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 556, 27 L.Ed.2d 543 (1971). The double jeopardy provision of

---

1. The exchange was as follows:

 Q. Did Mr. Abdi—according to your testimony, your testimony is that he did not ejaculate, did he?

 \* \* \* \* \* \*

 A. Just this moment I am saying that he did not have a full ejaculation, but certainly, I mean it happens all the time, a little bit can come out without—excuse me, orgasm.

 Q. You have had personal experience with that?

 R. 107.

2. Subsections (b) and (c) allow such information to come into evidence under limited circumstances not present here.

the Constitution protects this interest by requiring that a trial judge declare a mistrial without the consent of the defendant only after it determines that mistrial is a manifest necessity.[3] Manifest necessity admits of no precise formulation[4] or mechanical application, for the "high degree" of necessity mandated by the phrase can be found in a variety of circumstances. *Arizona v. Washington*, 434 U.S. 497, 506–07, 98 S.Ct. 824, 830–831, 54 L.Ed.2d 717 (1978).

A reviewing court looks for a manifest necessity by examining the entire record in the case without limiting itself to the actual findings of the trial court. *Grooms v. Wainwright*, 610 F.2d 344 (5th Cir.1980), *cert. denied*, 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789 (1980). The state asks that we look beyond the existing record and remand this case for an evidentiary hearing to determine whether manifest necessity was present. Normally a reviewing court does not supplement the record with an evidentiary hearing because the only additional evidence to be explored would have to come from the trial judge; relying on the record alone discourages the unseemly practice of asking a trial judge to testify about his or her reasoning in some earlier proceeding. Besides, in this case the record standing alone allows us to conclude that there was a manifest necessity for the declaration of a mistrial.[5]

The decision of the state trial court that mistrial was a manifest necessity deserves great deference. This is especially true when the grounds for the mistrial relate to jury prejudice, for the trial judge is in a peculiarly good position to observe the jurors, the witnesses and the attorneys in order to evaluate the extent of the prejudice. *Arizona v. Washington, supra*, 434 at 510–14, 98 S.Ct. at 832–834. The trial court's determination might carry less weight where prosecutorial misconduct leads to a mistrial of some tactical benefit to the government, because the manifest necessity doctrine resists precisely this sort of evil. *See Cherry v. Director, State Board of Corrections*, 635 F.2d 414, 418–19 & n. 6 (5th Cir.1981). But the trial court's conclusion in this case is entitled to special deference since there is no suggestion of prosecutorial misconduct.

The manifest necessity for a mistrial can exist alongside less drastic alternatives, so long as the record discloses that the trial court considered alternatives before declaring mistrial. *Grandberry v. Bonner*, 653 F.2d 1010, 1014 (5th Cir.1981) (en banc). The trial court obviously considered alternatives in this case. The prosecutor explicitly referred to the possibility of cautionary instructions to the defense attorney. He made this suggestion when the court asked about possible ways to deal with the improper cross-examination. The court also said that "I don't want this jury to pass on a case with that sort of evidence before them," implying that in the court's judgment a corrective instruction to the jury would not remove the prejudice.

---

3. The defendant in this case did not object to the declaration of mistrial, but a formal objection is not necessary to show a lack of consent.

4. Justice Story authored the most familiar and perhaps most elusive description of manifest necessity:

"[C]ourts of justice ... [have] the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all of the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to

be used with the greatest caution, under urgent circumstances and for very plain and obvious causes ...."

*United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

5. Abdi asks that we apply the clearly erroneous standard of review to the findings of the federal district court. But the district court made no findings of fact in this case; rather, it performed the same function as this court, reviewing the record and applying the law to existing facts. Accordingly, we subject the district court's conclusions to plenary review. Cf. *Sullivan v. Wainwright*, 695 F.2d 1306 (11th Cir. 1983).

 The speed of the decision reached by the trial court here does not indicate an abrupt or precipitous decision that failed to consider the alternatives seriously enough. Certainly the pace at which proceedings move may reinforce the impression of an abrupt decision under some circumstances. In *Grandberry, supra,* for example, the court had declared a mistrial because a juror was feeling too ill to be sequestered overnight without his medication. The Fifth Circuit found it significant that only a few minutes passed between the first mention of the illness and the declaration of a mistrial.

But not all fast decisions are abrupt decisions; an abrupt decision must be *inappropriately* fast. A quick decision could be proper where, as in this case, the misconduct is particularly flagrant. The trial court considered the defense counsel's question to be an egregious one, twice referring to it as "highly improper." The clear policy of the shield law supports the trial court's evaluation and reflects the judgment of Georgia lawmakers that such evidence is unusually prejudicial. The statute also put the defense attorney on notice regarding such inquiries. The obvious impropriety of the action here made a swift declaration of mistrial more acceptable than in cases where the reason for mistrial is more susceptible to doubt, *e.g., Arizona v. Washington,* 434 U.S. at 511, 98 S.Ct. at 833; *United States v. Starling,* 571 F.2d 934 (5th Cir.1978). Furthermore, the judge easily could have foreseen and considered the consequences of the type of misconduct that appeared in this case. Where the source of prejudice can be reasonably anticipated, there is less need for lengthy deliberation when the prejudicial event happens. Under the circumstances of this case, then, the decision of the trial court does not reveal an abruptness or a failure to adequately consider alternatives.

 Similarly, the failure to consult with the defense attorney before declaring a mistrial does not betray an inadequate attention to alternatives short of mistrial. The failure to consult with counsel will make a difference in some instances. *See Grandberry, supra; Cherry, supra.* But *Grandberry* and *Cherry* both involved alternatives to mistrial that could be accomplished only with the consent of the parties.[6] Moreover, here the only attorney not consulted beforehand was the person responsible for the entire problem.

The trial court could have demonstrated more plainly that it had seriously considered the alternatives. Consulting with both attorneys would have confirmed what other factors suggest already. But as long as other parts of the record indicate that the trial court considered alternatives, the failure to consult with one attorney is not by itself fatal to the declaration of mistrial.

Other judges in this situation might have disposed of the problem differently or developed a more thorough record regarding the possible alternatives to a mistrial. But the judge who was present in the courtroom to observe the jurors, the attorneys and the witnesses made a swift but deliberate decision that the improper question made it impossible for the jury to deliver a fair verdict. It was a decision that could have been reached by any reasonable judge. *See Cherry v. Director, State Board of Corrections,* 635 F.2d at 418. Accordingly, the declaration of a mistrial was proper and does not bar the second trial of Abdi for this alleged offense. The judgment of the district court is REVERSED.

---

**6.** *United States v. Jorn, supra,* noted only that the trial court did not leave counsel time to make suggestions or objections that they might have had, but did not mention an affirmative need for consultation.