United States Court of Appeals,

Eleventh Circuit.

No. 94-9455.

Richard Edward VENSON, Petitioner-Appellee,

v.

STATE OF GEORGIA, Respondent-Appellant.

Feb. 12, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 2:94-cv-066-WCO), William C. O'Kelley, District Judge.

Before EDMONDSON and COX, Circuit Judges, and FAY, Senior Circuit Judge.

PER CURIAM:

The State of Georgia appeals the district court's grant of relief on a 28 U.S.C. § 2254 petition brought by Richard Edward Venson. The district court held that Venson's second trial on sexual battery charges violated his Fifth Amendment right against double jeopardy. We affirm.

I. BACKGROUND

In January 1993, Venson was charged with three counts of sexual battery in Hall County, Georgia. At that time, Venson was a schoolteacher at East Hall High School ("East Hall"), and the three counts involved three female students at East Hall. Venson's first trial on these charges began on June 1, 1993 and ended the next day in a mistrial. Venson's second trial on the same charges was held in July, 1993 and resulted in a conviction for sexual battery on Count One and an acquittal on Counts Two and Three.

A. The June Trial

At the first trial, the complaining witness on Count One,

Elizabeth McNeeley, testified that on October 26, 1992, Venson invited her into his office after class was dismissed and hugged her in a way that made her feel uncomfortable. The state also introduced the testimony of three other witnesses in support of Count One. Laura Sloan, McNeeley's friend, and Kelly Smith, McNeeley's accounting teacher, both testified that they talked to McNeeley soon after her class with Venson. Sloan and Smith both testified that McNeeley was crying and that McNeeley said Venson had hugged her. Kathy Meaders, a caseworker from the state Department of Family and Children Services who interviewed McNeeley, also testified.

The remaining two students testified about abuse that allegedly occurred during the spring of 1992, the school year prior to the incident described by McNeeley. Both Tammy Pressley, the complaining witness on Count Two, and Cassaundra Shockley, the complaining witness on Count Three, testified that Venson touched them during class while they were seated at a table beside his desk. Shockley testified that she and Pressley discussed the incidents before together reporting them to school authorities.

During the cross-examination of Shockley, the following interchange occurred between the witness and Venson's attorney:

Q: ... [W]hy didn't you and ... Ms. Presley [sic] ... go and tell the school people then?

A: Because we didn't think nobody would believe us.

Q: You did not think anyone would believe you?

A: Yes.

Q: Is the reason for that they caught you forging notes out at the school and caught you telling untruths?

(R.Ex. A, First Trial, Vol. 2 at 226). The state immediately objected to the question and moved for a mistrial.

The court heard arguments on the motion outside the presence of the jury. The state argued that the question was improper for two reasons. First, the question represented an accusation which, if true, would be a part of Shockley's confidential school records.[1] Second, the state argued that it was improper to impeach a witness with a specific act rather than by evidence of general bad character. *See* O.C.G.A. § 24-9-84 (1995). Finally, the state argued that it was impossible to cure the effect of the improper question by either disproving the accusation or instructing the jury to ignore it. The state could only disprove the accusation or explain that the incident was irrelevant by introducing the school records, which were inadmissible under a pre-trial order. A curative instruction, the state argued, would not effectively remove the taint of the accusation from the jurors' minds.

Venson's attorney argued that his question was proper because he was questioning Shockley about a specific act, not about the contents of her school record. He contended that he was entitled to question Shockley about why she thought the school officials would not believe her. The defense also argued that a witness properly could be impeached with evidence of prior false

[1]In an order issued before the first trial, the court ruled that the academic and disciplinary records of the complaining witnesses kept by the Hall County School Board were confidential under 20 U.S.C. § 1232g (1994). The trial court did, however, inspect the records in camera for any material that tended to exculpate Venson. Finding none, the trial court did not release any of the records to the defendant, but agreed to release such information if, during the course of the trial, the contents of the records became relevant.

statements.  Even if the court held that the question was improper, the defense argued, a curative instruction was sufficient to remove any prejudice from the jurors' minds.  Finally, Venson's attorney contended that the improper granting of a mistrial would subject his client to double jeopardy.

After hearing argument on the propriety of the question, the court examined case law on the issue and reviewed the school records during a recess.  The records revealed that the witness had forged a note from her mother to school officials.  However, the note-forging incident occurred *after* the witness complained to school authorities about Venson.  When the defense attorney could provide no evidence that any such incident occurred before the witness reported Venson to school authorities, the court held the question improper.

The trial court then addressed the question of whether a mistrial should be granted.  The court considered the alternative of giving a curative instruction and expressed misgivings about declaring a mistrial.  Specifically, the court stated:

> Well, that's the question I've been wrestling with in there is can I give a curative instruction?  Of course, I can say disregard the question Mr. Stroberg just asked.  But is that reasonable under the circumstances and is it going to get it out of their minds?  Now, I do not want to grant a mistrial in this case.
>
> This is traumatic.  I realize this is awful to have to put everybody through this another time.  It's not something I want to do.

(R.Ex. A, First Trial, Vol. 2 at 233-34).  In a written order granting the motion for a mistrial, the court stated that it found that the prejudice to the State could not be eradicated with a curative instruction.  The court also refused to "cure[ ] a wrong

with another wrong" by allowing the State to admit the school records to explain the incident. The court found a "moral and legal necessity" for a mistrial. (Appellant's R. Excerpts D at 3).

B. The July Trial and Direct Appeal

At Venson's second trial on the same charges in July 1993, he was convicted on Count One charging the sexual battery of McNeeley, but acquitted on Counts Two and Three, involving Pressley and Shockley. Before the second trial, Venson's attorney filed a plea of former jeopardy in which he argued that no manifest necessity existed for declaring a mistrial with respect to Counts One and Two based on the improper question put to the complaining witness on Count Three. The trial court denied the motion, responding:

> ... As to Count 3, I think that the order that the Court entered on the mistrial states my position.
>
> As to the issue of whether the counts could have been separated, I don't know. You may have a point. I'm not willing to tackle that at this point. If need be, that will go up to the Court of Appeals....

(R.Ex. A, Second Trial, Vol. I at 6).[2]

On direct appeal, the Georgia Court of Appeals held that the question asked by Venson's attorney was improper and that the trial judge did not abuse her discretion in granting the mistrial. The Supreme Court of Georgia denied certiorari.

C. The District Court

Venson filed this 22 U.S.C. § 2254 petition in federal district court, claiming that the second trial and conviction

---

[2]The trial judge who conducted Venson's first trial, Kathlene F. Gosselin, was unable to preside at the second trial due to illness. Judge Gosselin ruled on Venson's plea of former jeopardy in a telephonic conference conducted just prior to Venson's second trial.

violated his Fifth Amendment guarantee against double jeopardy. The district court held that the question asked by Venson's attorney was improper, and that the grant of a mistrial was proper with respect to Counts Two and Three. However, the court held that granting a mistrial on Count One was improper because the trial court failed to make a finding that manifest necessity existed as to Count One, and that therefore Venson's retrial on Count One violated his right against double jeopardy. Without reaching the question of whether manifest necessity actually existed for a mistrial on Count One, the district court granted relief on the petition. The State of Georgia appeals.

## II. STANDARD OF REVIEW

The retrial of a defendant in a criminal case after a mistrial is declared due to juror prejudice violates the Double Jeopardy Clause if the first trial court abused its discretion in granting the mistrial. *Arizona v. Washington,* 434 U.S. 497, 511-14, 98 S.Ct. 824, 833-34, 54 L.Ed.2d 717 (1978). Where the district court does not hold an evidentiary hearing on the petitioner's claim but merely reviews the trial record and applies the law, we review the decision of the district court de novo. *Abdi v. Georgia,* 744 F.2d 1500, 1503 n. 5 (11th Cir.1984), *cert. denied,* 471 U.S. 1006, 105 S.Ct. 1871, 85 L.Ed.2d 164 (1985). In reviewing the trial court's decision that manifest necessity existed for a mistrial, we may examine the entire record in addition to the actual findings of the trial court. *Id.* at 1503.

## III. DISCUSSION

The Fifth Amendment provides that "[n]o person shall ... be

subject for the same offence to be twice put in jeopardy...." U.S. Const.Amend. V.[3]  The Double Jeopardy Clause clearly bars the reprosecution of a criminal defendant on the same charges after a judgment of conviction or acquittal.  *United States v. Wilson,* 420 U.S. 332, 342-43, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)).  Retrial may also be barred after a trial that is terminated prior to final judgment, although the Supreme Court has repeatedly rejected a categorical approach to deciding when, under such circumstances, retrial is barred.  *United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).  At a minimum, the criminal proceeding must have reached a point when the policies underlying the Double Jeopardy Clause are implicated, at which time jeopardy "attaches."  *Id.* at 480, 91 S.Ct. at 555;  *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975).  In cases tried to a jury, jeopardy attaches when the jury is empaneled and sworn.  *Serfass,* 420 U.S. at 388, 95 S.Ct. at 1062.

Once jeopardy has attached, the question remains whether, under the circumstances of the particular case, the Fifth Amendment dictates that the defendant not be retried.  *Jorn,* 400 U.S. at 480, 91 S.Ct. at 555.  Our law strikes the balance between the defendant's interest in completing his trial and society's interest in enforcing criminal laws with this test:  where the trial court

---

[3]The guarantee applies to defendants in state as well as federal criminal proceedings through the Due Process Clause of the Fourteenth Amendment.  *Benton v. Maryland,* 395 U.S. 784, 796, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707 (1969).

grants a mistrial over a defendant's objection, reprosecution of the defendant is not constitutionally prohibited if manifest necessity exists for the mistrial. *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830 (citing *United States v. Perez,* 22 U.S. (9 Wheaton) 579, 579, 6 L.Ed. 165 (1824) (Story, J.) as the "classic formulation of the test").

The prosecution bears the burden at trial of showing manifest necessity when the defendant objects to the grant of a mistrial. *Id.* The trial judge must exercise sound discretion in deciding whether manifest necessity exists. *Granberry v. Bonner,* 653 F.2d 1010, 1014 (5th Cir. Unit A Aug. 1981). The judge should consider whether any alternatives to a mistrial are available, but the failure to adopt or consider a particular alternative is not constitutional error. *Cherry v. Director, State Bd. of Corrections,* 635 F.2d 414, 418 (5th Cir.), *cert. denied,* 454 U.S. 840, 102 S.Ct. 150, 70 L.Ed.2d 124 (1981) (quoting *Arizona v. Washington,* 434 U.S. at 517, 98 S.Ct. at 836). Judicial economy is not a proper factor for the judge to consider when deciding whether manifest necessity exists. *United States v. Chica,* 14 F.3d 1527, 1533 (11th Cir.1994).

The decision of a state trial court to retry a criminal defendant may be reviewed by a federal court for a violation of the petitioner's right against double jeopardy on a petition for habeas corpus. However, that review must be undertaken with the understanding that the writ serves a limited, secondary purpose. *See Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 3392, 77 L.Ed.2d 1090 (1983). Once a defendant has exhausted direct

review of a conviction, a presumption of finality and legality attach to the conviction, and for this reason the petitioner bears the burden on habeas review of making a prima facie case that his detention is in violation of some federal right. *Id.; Cherry,* 635 F.2d at 419. The federal court must assume in the face of an ambiguous trial record that the state court judge complied with federal law, even if the applicable legal standard is not mentioned in the record. *Cherry,* 635 F.2d at 419 n. 7 (quoting *Townsend v. Sain,* 372 U.S. 293, 315, 83 S.Ct. 745, 758, 9 L.Ed.2d 770 (1963)). What that means in the context of this case is that the federal court must assume that the trial court found manifest necessity existed for a mistrial whether or not the record affirmatively reflects such a finding. A state trial court's finding that manifest necessity existed for retrial is not subject to attack simply because the words "manifest necessity" do not appear in the record. *Arizona v. Washington,* 434 U.S. at 516-17, 98 S.Ct. at 836.

Venson argues, and the district court found, that the trial court failed to make any determination that manifest necessity existed as to Count One. The district court erred, however, because it failed to presume that the trial court complied with the requirements of the Due Process Clause, and that the conviction was legal and final. The court stated in its order that, "The decision was wrong ... because the trial judge did not *consider* whether manifest necessity existed before declaring a mistrial as to Count One. The trial court made no indication in the record that the jury could not render an impartial verdict as to Count One." (R.

10 at 11.)  Contrary to the district court's order, the trial judge was not required to make the manifest necessity determination explicit in the record.  *See Arizona v. Washington,* 434 U.S. at 516-17, 98 S.Ct. at 836.

Venson has the burden of establishing a prima facie case that his conviction violated the Double Jeopardy Clause.  He has pointed to no evidence in the record of the first trial demonstrating that the trial court did not consider manifest necessity with respect to Count One.  The record of the first trial is ambiguous on this point.  Venson's only evidence that the trial court failed to consider manifest necessity with respect to Count One is the statement of the trial judge made before the second trial that the counts perhaps could have been separated.  This passing comment, made over a month after the declaration of the mistrial, is insufficient to show that the judge failed to consider manifest necessity with respect to Count One at the time that the mistrial was declared.  In the absence of sufficient evidence to the contrary, we must assume that the trial court found a manifest necessity for mistrial on all three counts.

Our inquiry does not end here, however, because the district court did not reach the question of whether the trial court's decision that manifest necessity existed for a mistrial on Count One was a sound exercise of discretion.  This question is a fact-intensive one.  *Chica,* 14 F.3d at 1531.  However, neither Venson nor the state requested an evidentiary hearing on the manifest necessity issue, and nothing in this case suggests that an evidentiary hearing would have been appropriate.  *See Abdi v.*

*Georgia,* 744 F.2d at 1500, 1503 (11th Cir.1984). Because the district court has not held an evidentiary hearing, the manifest necessity determination simply involves applying the legal standard to the facts in the trial record. *See id.* at 1503 n. 5. Review of a trial record is a task at which this court is competent, and both parties have briefed the manifest necessity issue in this court. Although we could properly remand to the district court, we choose, for the reasons we have noted, to address the issue ourselves.

The trial court's decision to grant a mistrial in Venson's case deserves an added degree of respect because it was based on juror prejudice, a factor which the trial court is best situated to observe. *See Arizona v. Washington,* 434 U.S. at 513-14, 98 S.Ct. at 834. Nonetheless, we hold that the trial court abused its discretion in granting a mistrial on Count One. We agree with the trial court that the question asked by Venson's attorney was improper under Georgia law. *See* O.C.G.A. § 24-9-84, *Williams v. State,* 251 Ga. 749, 799, 312 S.E.2d 40, 81 (1983) (holding that specific acts cannot be used to impeach a witness unless the misconduct resulted in a conviction for a crime of moral turpitude); *cf.* Fed.R.Evid. 608(b). Furthermore, the taint produced by the improper question was prejudicial to the state's case against Venson on Counts Two and Three. However, the improper question resulted in such minimal prejudice to the state on Count One that finding manifest necessity for a mistrial on that count was an abuse of discretion.

Venson's attorney sought to impeach Shockley, the complaining witness on Count Three, with character evidence of a specific act.

He argued that this evidence tended to show the witness's propensity for untruthfulness. (R.Ex. A, First Trial, Vol. 2 at 2332-33.) Impeachment with such evidence is not allowed under Georgia evidence law. O.C.G.A. § 24-9-84. The question was clearly prejudicial to the state's case on Count Three because it improperly attacked the credibility of the complaining witness on that count.

The question was also prejudicial to the state's case on Count Two for at least two reasons. First, Shockley's testimony was critical evidence for the state because Shockley was a witness to the alleged abuse of Pressley that was the subject of Count Two. Second, Shockley was a "similar transaction" witness on Count Two because her testimony about what Venson did to her was very similar to Pressley's testimony about Venson's conduct.

The improper impeachment of Shockley had a very minimal prejudicial impact on the state's case against Venson on Count One. Shockley did not witness the incident between Venson and McNeeley that formed the basis for Count One, and the two girls never discussed Venson's behavior with each other before reporting it. The only possible theory on which Shockley's testimony was relevant to Count One was that Venson's conduct, as described by Shockley, was similar to the conduct made the subject of the charge in Count One. The accounts of Shockley and McNeeley are similar in that they both describe Venson improperly touching female students, but the similarity ends there. McNeeley testified that Venson hugged her when they were alone after class, but Shockley testified that she was touched by Venson while class was in session. The

incidents described by the two girls also occurred during different school years. Finally, the fact that the state's case on Count One was supported by the testimony of three other witnesses buttresses our conclusion that the state suffered little prejudice on that count.

IV. CONCLUSION

Because the trial judge abused her discretion in granting a mistrial on Count One, we AFFIRM the district court's grant of relief on Venson's habeas petition.

AFFIRMED.