[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 6, 2007
THOMAS K. KAHN
CLERK

No. 06-12664

D. C. Docket No. 05-00094 CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HOA QUOC TA,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Georgia

**(April 6, 2007)**

Before DUBINA and COX, Circuit Judges, and SCHLESINGER,* District Judge.

PER CURIAM:

_____
*Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of
Florida, sitting by designation.

Hoa Quoc Ta appeals the district court's denial of the motion to dismiss the indictment on double jeopardy grounds after the court declared a mistrial over defense counsel's objection.  The trial court, *sua sponte,* declared a mistrial after defense counsel repeatedly refused to comply with the trial judge's instructions regarding opening statement and argued with the judge in view of the jury.  Defendant then perfected this appeal.[1]  We affirm.

## I.Background

Hoa Quoc Ta and two codefendants were indicted for kidnaping, in violation of 18 U.S.C. § 1202, carjacking, in violation of 18 U.S.C. § 2119, and using and carrying a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c).  The codefendants pled guilty prior to trial and Hoa Quoc Ta's trial started on January 30, 2006.  After the jury was empaneled and administered the oath, the Government made its opening statement the following day.  Counsel for defendant began his opening statement immediately after the Government completed its remarks.  Well into defense counsel's opening statement, the Government objected to counsel's recitation of irrelevant facts.[2]   At the time the

---

[1] Defendant Hoa Quoc Ta's motion to stay re-trial pending interlocutory appeal was granted.

[2] Having only the written transcript this Court is hampered in making a precise assessment of the opening remarks duration, nevertheless, the Court notes that the Government's opening statement spanned ten pages of the transcript and the Government's objection was made after defense counsel spoke for ten pages.

objection was made, defense counsel had not yet addressed the facts of the kidnaping, carjacking, or the related firearms violations for which defendant was charged. In response to the objection, the trial judge instructed defense counsel to "move on to more germane facts you expect the evidence to show."

After Hoa Quoc Ta's counsel continued his opening for several more minutes without addressing the operative facts of the crimes alleged, the trial judge had the courtroom deputy deliver a note to defense counsel stating it was time to begin wrapping up his opening statement. Counsel again continued with his opening, and shortly thereafter, the following exchange occurred between the trial judge and defense counsel:[3]

> Court: Counselor, I hate to interrupt. Let's bring it to a close.
> Counsel: I will your Honor, thank you.
> Court: Let's bring it to a close.
> Counsel: I will your Honor. It's a long case, Judge.

Defense counsel resumed delivery of his remarks, without reaching the events charged in the indictment, and the court again instructed counsel to bring his opening statement to a close:

---

[3]At this point, defense counsel's entire remarks spanned some nineteen pages, almost twice the amount of pages used from the time the Government's objection was first raised and the time the trial judge first admonished defense counsel to wrap up his opening.

Court: Counsel, I'm going to give you two minutes and don't argue your case. You can tell the jury what you anticipate the evidence will show. You have just two minutes, two minutes.

After this instruction from the court, defense counsel began to argue[4] with the trial judge in the presence of the jury:

Counsel: Judge –
Court: Two minutes.
Counsel: I need more than two minutes.
Court: I'm not going to give you more than two minutes, Counsel, go ahead. Sum it . . . up in two minutes.
Court: May I approach, sir?
Court: No, you may not approach. Go ahead and do as I directed, bring this opening statement to a conclusion.
Counsel: Judge, you didn't give me a time limit.
Court: You knew it was 30 minutes.
Counsel: No, I don't [sic].
Court: I want you to do it. Go ahead, I'm giving you two additional minutes, I've given you more. Go ahead and bring your . . . opening statement to a conclusion.
Counsel: Will you give me ten –
Court: No.
Counsel: – so I can finish?
Court: No, I will not give you ten minutes, no.
Counsel: I haven't gotten to the kidnaping, sir.
Court: Take the jury to the jury room.

After the jury was removed from the courtroom, the trial judge again told defense counsel to finish his opening remarks in two minutes, to which defense counsel responded that he could not comply with the trial judge's instruction:

---

[4]The district judge to whom the case was subsequently transferred listened to the tape of the exchange and confirmed that it was argumentative in nature.

Court: Counselor, I want you to bring it to a close in two minutes. If you can't do that –
Counsel: I can't do that Judge, and I'd like to be heard.
Court: Let the record reflect that the Court is going to declare a mistrial because counsel is not cooperating with the Court.
Counsel: Your Honor, I will attempt to do that, but I cannot –
Court: Court will be in recess. Court's in recess.

When court resumed in chambers the following exchange took place:

Court: Let the record reflect that the Court is going to declare a mistrial. Counsel knows – if he's not familiar with the opening, he had up to 30 minutes. The Court sent a warning telling him to bring his closing [sic] argument to a conclusion; he would not do it. And he persisted, he wants to spend as much time with his opening statement as he wants. He cannot abide by the Court's instruction; therefore, the Court is going to declare a mistrial and have this case referred to someone else because I cannot work with a lawyer who is not going to cooperate with the Court. Let the record so reflect.
Counsel: Your Honor, may I be heard, please, sir?
Court: You can be heard, make it brief.
Counsel: I will.
Court: Make it brief.
Counsel: First, I'd like to apologize. I did not mean to show the Court disrespect and so I'd like to apologize for that. I had no idea in any way, shape, or form, I give you my word, that I was limited to 30 minutes. And when you sent me the note I tried to speed up but I had to get to the crime in our defense. Ths is a complicated case, it's going to last over a week, my client's facing life in prison. And so I do want to apologize to you and I want to make one thing very clear, that I did not intentionally in any way hoard more time than I was allowed. I have never been before you before. It did not dawn on me that in a case of this magnitude that you would limit me to 30 minutes in an opening.
Court: Did you ask the Court for additional time in which to make an opening statement?
Counsel: I didn't know to, your Honor. I didn't know your rule was 30 minutes. As you know, there is no rule, and your rule, I understand –

5

Court: How much time did you spend?

Government: Your Honor, the practice, as I understand it, in federal court is, you know, your opening statement is fairly short. And I know [defense counsel] has tried other cases in federal court. I have never heard such a long opening statement in a case like this.

Court: Well, I just don't like what has happened.

Counsel: Judge –

Court: I think it's best we just clean it up and –

Counsel: May I make a request, Judge –

Court: – be assigned to another judge.

Counsel: May I make a request?

Court: What's that?

Counsel: I think it would be a mistake to continue with a mistrial in this case, and here's the reason: We have all of our witnesses from out of town.

Court: I understand that, but –

Counsel: I know, and my client –

Court: And the Court –

Counsel: And, Your Honor –

Court: – specifically asked you in a note to you to bring it to a close.

Counsel: And I will do that . . . I just think it's a mistake to commit – declare a mistrial.

Court: I'm sorry about that, but in fact the government is bearing this expense, anyway. But anyway, I'm going to declare a mistrial, excuse the jury, and this case will be reassigned. Thank you and good day.

The parties then returned to open court, and the court made the following

statement for the record:

> Court: Let the record reflect that the Court found it necessary to declare a mistrial in this case because counsel for the defendant would not follow the Court's instructions to bring his opening statement to a close after being told to do so on two or three occasions. The first occasion was in writing, writing submitted to counsel by the Court's deputy clerk, and the Court made I think two or three repeated requests that counsel bring his closing [sic] argument to a close within two minutes. Counsel refused to follow

6

the Court's instruction and an argument between the Court and counsel ensued in the presence of the [jury][5]. For those reasons the Court declared a mistrial and I am going to have this case reassigned to another judge.

The next day the trial judge issued a written order reiterating the reasons for the mistrial,[6] recusing himself from the case, and referring the case for reassignment to the next district judge in the rotation. Defendant then moved to dismiss the indictment and bar retrial on double jeopardy grounds, arguing that the trial court abused its discretion by declaring a mistrial in the absence of manifest necessity or prejudice. Defendant also argued that the trial court failed to consider alternatives before declaring a mistrial.

The Government responded that dismissal was not warranted because the trial court properly declared a mistrial, as there was manifest necessity. According to the Government, defense counsel's refusal to comply with the trial judge's order and the argument between the judge and counsel in the presence of the jury likely created juror bias against defense counsel. Thus, the mistrial protected the defendant from prejudice. The Government also disputed that double jeopardy

---

[5]While the transcript indicates that the court stated in the presence of the "court," it appears from the context that the court was referring to the exchange that occurred in the presence of the jury.

[6] "[C]ounsel for Defendant would not follow the Court's instructions to bring his opening statement to a close after being told to do so on multiple occasions . . . and then began to argue with the Court about the additional time he needed to conclude his opening statement, notwithstanding the jury being present to witness defense counsel's obstinance."

7

precluded it from retrying the defendant, noting that defense counsel did not raise the argument before the trial court; defense counsel only argued that it would be a mistake to grant a mistrial in this case because "we have all of our witnesses from out of town."

The second district judge reassigned to the case denied the defendant's motion to dismiss. In concluding that the exchange resulted in manifest necessity, the district court noted that the trial court's evaluation of prejudice was entitled to deference. Reviewing the record, the new judge concluded that the trial court had not acted abruptly or erratically in light of the terse exchanges that escalated to counsel's refusal to comply with the court's order. The newly assigned judge noted that the original trial judge had been on the bench for about 30 years and had a reputation for fairness and a tolerant demeanor. Additionally, the second district judge reviewed the opening statement and found it "bogged down in factual details not characteristic of an opening statement" and was rather "delivered more in the manner of a summation." The second district judge also concluded that the incident created a risk of juror bias, and that the mistrial protected defendant from any prejudice. The district judge further found that, although the trial judge should have considered alternatives, here, any curative instruction could have made the situation worse.

Defense counsel then moved for an interlocutory appeal and to stay the proceedings pending the outcome of the appeal. The district court granted the stay.

## II.Standard of Review

This Court reviews the district court's denial of a motion to dismiss an indictment for abuse of discretion. United States v. Quiala, 19 F.3d 569, 570 (11th Cir. 1994); United States v. Chica, 14 F.3d 1527, 1530 (11th Cir. 1994). An order declaring a mistrial is reviewed by this Court "to determine whether it was manifestly necessary, taking into consideration all circumstances." United States v. Berroa, 374 F.3d 1053, 1056 (11th Cir. 2004), cert. denied, 543 U.S. 1076 (2005) (citing United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165 (1824)). This Court gives deference to the trial judge's finding of manifest necessity, but the deference "varies according to the circumstances, which circumstances include the basis for the order of mistrial and the trial judge's exercise of sound discretion in making the decision." Id. (citing Arizona v. Washington, 434 U.S. 497, 509-10, n.28, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)). Whether a mistrial is a manifest necessity is a fact-intensive inquiry and, therefore, is not susceptible to a mechanical formulation. Chica, 14 F.3d at 1531. Moreover, this Court reviews "the entire record in the case without limiting [itself] to the

9

actual findings of the trial court." Id.; accord Abdi v. Georgia, 744 F.2d 1500, 1503 (11th Cir. 1984). The government bears the heavy burden of establishing manifest necessity. Chica, 14 F.3d at 1531 (citing Washington, 434 U.S. at 505, 98 S. Ct. at 830).

### III. Discussion

The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from being subjected to repeated prosecutions or multiple punishments for the same offense. U.S. Const. amend. V; see also United States v. Dinitz, 424 U.S. 600, 606 96 S. Ct. 1075, 1079, 47 L. Ed. 2d 267 (1976). Jeopardy attaches once the jury is empaneled; once jeopardy has attached, the defendant has a right to have the case decided by that jury, except under very limited circumstances. Crist v. Bretz, 437 U.S. 28, 35, 98 S. Ct. 2156, 2161, 57 L. Ed. 2d 24 (1978). When a judge grants a mistrial without the defendant's consent, the defendant may have been deprived of the "valued right to have his trial completed by a particular tribunal." United States v. Jorn, 400 U.S. 470, 484, 91 S. Ct. 547, 557, 27 L. Ed. 2d 543 (1971) (citing Wade v. Hunter, 336 U.S. 684, 689, 69 S. Ct. 834, 837, 93 L. Ed. 974 (1949)); Quiala, 19 F.3d at 570.

The Constitution protects the defendant's valued right to have the trial completed by a particular tribunal "by requiring that a trial judge declare a mistrial

10

without the consent of the defendant only after it determines that mistrial is a manifest necessity." Abdi v. Georgia, 744 F.2d 1500, 1503 (11th Cir. 1984); see also Perez, 22 U.S. (9 Wheat.) at 580; Illinois v. Somerville, 410 U.S. 458, 461, 93 S. Ct. 1066, 1069, 35 L. Ed. 2d 425 (1973); United States v. Bradley, 905 F.2d 1482, 1486 (11th Cir. 1990). While "manifest necessity" is not subject to precise formulation, it is described as a "high degree of necessity." Arizona v. Washington, 434 U.S. 497, 506-07, 98 S. Ct. 824, 831, 54 L. Ed. 2d 717 (1978); Abdi, 744 F.2d at 1503. In determining the existence of manifest necessity for a mistrial, a trial court must exercise its sound discretion. Arizona, 434 U.S. at 506-07, 98 S. Ct. at 831; Venson v. Georgia, 74 F.3d 1140, 1145 (11th Cir. 1996). In exercising this discretion, "unquestionably an important factor to be considered is the need to hold litigants on both sides to standards of responsible professional conduct in the clash of an adversary criminal process." Jorn, 400 U.S. at 485-86, 91 S. Ct. at 557.

Appellant Hoa Quoc Ta argues that the mistrial was not supported by manifest necessity, and, therefore, any retrial would violate double jeopardy. According to Appellant, the record does not support any finding of manifest necessity because the mistrial was not to his benefit, the trial judge failed to consider alternatives, and the judge acted abruptly and without deliberation.

11

Appellant also argues that the trial judge's frustration with counsel was not a sufficient reason to declare a mistrial. Further he asserts that the second district judge erred by deferring to the trial judge's determinations because the record was devoid of any evidence, and that defense counsel neither engaged in any misconduct nor refused to obey the trial judge's order.

The Government responds that the mistrial was supported by a manifest necessity because of defense counsel's repeated refusal to heed the trial judge's instructions, counsel's argument with the trial judge in the jury's presence, and the trial judge's obvious frustration with counsel, which likely caused prejudice to the defendant. Moreover, the Government contends that the trial judge did not act abruptly, but rather excused the jury and moved the parties to chambers to discuss the mistrial. The Government notes that defense counsel never requested a curative instruction or any other alternative measure, but it contends that a curative instruction would not have relieved the potential prejudice. Reviewing the record in this case, we conclude that the trial court did not abuse its discretion in discharging the jury. See Jorn, 400 U.S. at 486-87, 91 S. Ct. at 558.

The trial judge clearly indicated that the mistrial was declared because defense counsel willfully refused to comply with the judge's repeated admonition to bring his opening statement to a close, and that he then proceeded to argue with

12

the judge in the presence of the jury. The second district judge deferred to the original trial judge's determination that the argument between the court and counsel in the presence of the jury created a risk of bias and prejudice against defense counsel. There was a significant risk that a juror might believe that defense counsel was not acting professionally toward the trial judge. In this case, the jury heard the trial judge and defense counsel engaged in an exchange that showed both the judge's frustration with counsel and counsel's refusal to obey the judge's instructions. The second district judge who listened to the tape of the proceeding noted that it was indeed argumentative in nature. In light of this, the original trial judge could have reasonably believed that the jury thought that defense counsel was incompetent or unscrupulous. See Washington, 434 U.S. at 512-13. Moreover, based on defense counsel's conduct displayed before the jury at the beginning of trial, the trial judge had no assurances that counsel would obey any further instructions and rulings during the remainder of the trial. Giving due deference to the trial judge's determination, it appears to this Court that the mistrial was to Appellant's benefit.

While it is favored that the trial court make manifest necessity determinations explicit in the record, the trial court is not required to make such statements. See id. at 516-17; Venson, 74 F.3d at 1146. It would not have been

13

an abuse of discretion for the trial judge to conclude that the argument, and the judge's comments and admonitions to defense counsel, communicated to the jury that the trial judge considered defense counsel inept or incompetent, thereby discounting defense counsel's credibility and effectiveness before the jury. There was a significant risk that the jury could have developed a bias against defense counsel due to his argument with the trial judge, and this bias against defense counsel could have transferred to Appellant Hoa Quoc Ta. Generally, the trial court is in the best position to gauge potential bias and, therefore, special deference is due when the grounds for the mistrial relate to jury prejudice. Washington, 434 U.S. at 510-14, 98 S.Ct. at 832-834; Abdi, 744 F.2d at 1503. In such instances the trial judge is in a prime position to observe the jurors, the witnesses, and the attorneys so as to evaluate the scope of the prejudice. Reviewing the record, we are confident that the trial judge did not abuse his discretion in concluding that the argument that transpired in view of the jury may have prejudiced how a jury would perceive and evaluate Hoa Quoc Ta at trial, thereby resulting in a manifest necessity for a mistrial.

Generally the trial court should consider alternatives before declaring a mistrial, yet manifest necessity may be present even when a less severe alternative exists. Abdi, 744 F.2d at 1503. At no time did defense counsel offer any

14

alternatives; nor did the trial court discuss any alternatives. Although the trial court is not required to choose a particular alternative, Venson, 74 F.3d at 1145, it is required to consider alternatives. Quiala, 19 F.3d at 572. A failure to consider alternatives "subjects the [trial] court's abrupt declaration of a mistrial to close appellate scrutiny." Quiala, 19 F.3d at 572; see also Grandberry v. Bonner, 653 F.2d 1010, 1014 (5th Cir. Unit A, 1981).[7]  Here, in ruling on the motion to dismiss the indictment, the district judge concluded that any curative instruction could have increased the chance of bias and prejudice. Reviewing the entire record we find the district judge did not abuse his discretion in making such a determination.

A trial court also abuses its discretion when it acts "irrationally" or in an "abrupt, precipitous or erratic manner" in granting a mistrial. Washington, 434 U.S. at 514; Bradley, 905 F.2d at 1488. The trial court's failure to consider alternatives to a mistrial is evidence of abruptness. Quiala, 19 F.3d at 572. Although quick decisions do not necessarily indicate abruptness, Abdi, 744 F.2d at 1504, the pace of the decision may "reinforce the impression of an abrupt decision." Id. (citing Grandberry, 653 F.2d at 1014). A decision is abrupt when it

---

[7]  In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this court held that all decisions handed down by the old Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

is "inappropriately fast." Id. (concluding that a quick decision was not abrupt because the misconduct was particularly flagrant). Another judge in this same situation might have responded to defense counsel's conduct differently or stated his consideration of alternatives to a mistrial more directly on the record. Nevertheless, the trial judge who was present in the courtroom observed the jurors, assessed the likelihood of prejudicial effect, and made the swift but deliberate decision that the mistrial was to defendant's benefit and manifestly necessary. Abdi, 744 F.2d at 1504. The second district judge who read the transcript and listened to the proceeding, and who was able to at least discern tone and inflection, which are unavailable from the written transcript, similarly determined that the mistrial was in the defendant's interest. For this determination we find no abuse of discretion.

Upon careful review of the record we find that the declaration of a mistrial was not an abuse of discretion and therefore retrial of defendant Hoa Quoc Ta is not barred. Accordingly, we affirm the district court's decision denying the motion to dismiss.

**AFFIRMED.**