[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14724
Non-Argument Calendar

_____

D.C. Docket No. 4:13-cr-00394-SLB-SGC-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PHILLIP DON SCOTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 3, 2015)

Before MARCUS, JORDAN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Phillip Scott appeals the district court's denial of his motion to dismiss the

indictment pursuant to the Double Jeopardy Clause. In his interlocutory appeal, he

argues that the district court erroneously found manifest necessity existed for a

new trial where the district court determined that the trial could not be rescheduled due to the jurors' scheduling conflicts.  After careful review, we affirm.

We review the district court's denial of a motion to dismiss the indictment for abuse of discretion.  United States v. Davis, 708 F.3d 1216, 1221 (11th Cir. 2013).  However, if the district court's decision to declare a mistrial was not based on manifest necessity, then the court abused its discretion by not dismissing the indictment on double jeopardy grounds.  Id.  We review whether there was manifest necessity for a mistrial by reviewing the entire record in the case without limiting the review to the actual findings of the trial court.  United States v. Therve, 764 F.3d 1293, 1298 (11th Cir. 2014).  The deference given "to the district court's declaration of a mistrial varies according to the circumstances, which include the basis for the order of mistrial and the trial judge's exercise of sound discretion in making the decision."  Id. (quotations omitted).

The Fifth Amendment's Double Jeopardy Clause protects a criminal defendant from being subjected to multiple prosecutions for the same offense.  U.S. Const. amend. V.  Jeopardy attaches when the jury is empaneled and sworn, and, "[o]nce jeopardy attaches, a defendant has a constitutional right to have his case decided by that jury, except under limited circumstances."  Therve, 764 F.3d at 1298.  However, "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest

in fair trials designed to end in just judgments." Id. (quotations omitted). The Double Jeopardy Clause is not violated by re-trial following a mistrial so long as the grant of mistrial is due to "manifest necessity." See Richardson v. United States, 468 U.S. 317, 323-24 (1984). Under the doctrine of manifest necessity, "district courts are permitted to declare a mistrial and discharge a jury only where, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." Therve, 764 F.3d at 1298 (quotations omitted).

"[W]hile 'manifest necessity' describes the magnitude of the government's burden, it is not a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge, and the key word 'necessity' cannot be interpreted literally." Davis, 708 F.3d at 1221 (quotations and ellipsis omitted); see also United States v. Chica, 14 F.3d 1527, 1531 (11th Cir. 1994) ("Whether manifest necessity exists is a fact-intensive inquiry, and is not susceptible to a mechanical formulation." (quotations and citation omitted)). In Davis, we held that manifest necessity existed for a mistrial based on the combined effect of a district court properly dismissing a juror who could not sufficiently comprehend English and the defendant's refusal to proceed with a jury of less than 12 members. 708 F.3d at 1224. The strictest scrutiny of a mistrial is appropriate where "mistrial is declared because of the unavailability of critical prosecution

evidence or when the prosecution seeks to achieve a tactical advantage over the accused." Therve, 764 F.3d at 1298 (quotations omitted).

Although a "high degree" of necessity is required before concluding that a mistrial is appropriate, Arizona v. Washington, 434 U.S. 497, 506-07 (1978), a district court does not abuse its discretion in declaring a mistrial simply because other alternatives might have been permissible, see United States v. Dominguez, 226 F.3d 1235, 1247-48 (11th Cir. 2000). The district court "should consider whether any alternatives to a mistrial are available, but the failure to adopt or consider a particular alternative is not constitutional error." Venson v. Georgia, 74 F.3d 1140, 1145 (11th Cir. 1996). Manifest necessity for a mistrial can exist alongside other alternatives, so long as the record shows that the district court considered alternatives before declaring a mistrial. United States v. Bradley, 905 F.2d 1482, 1488 (11th Cir. 1990). An important consideration in such an appeal "is whether the trial court carefully considered the alternatives and exercised sound discretion and did not act in an abrupt, precipitous[,] or erratic manner." Id. Whether or not the district court consulted with the parties before declaring a mistrial is a factor that we consider in deciding whether the district court acted within its discretion, though the failure to consult is not by itself fatal to the declaration of mistrial. Abdi v. Georgia, 744 F.2d 1500, 1504 & n.6 (11th Cir. 1984). A district court is not required to make a specific finding of manifest

necessity or "articulate on the record all the factors which informed the deliberate exercise of [its] discretion" so long as the record as a whole provides sufficient justification for the ruling.  Washington, 434 U.S. at 517.

We have thus relied on four indicators in determining whether the district court abused its discretion in granting a mistrial:

> Has the trial judge (1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chosen the alternative least harmful to the defendant's rights, (3) acted deliberately instead of abruptly, and (4) properly determined that the defendant would benefit from the declaration of mistrial.

United States v. Berroa, 374 F.3d 1053, 1058 (11th Cir. 2004) (quotation omitted); Fed.R.Crim.P. 26.3.  We have observed that, in situations "where the required number of jurors needed to render a verdict is reduced by unforeseen circumstances, the trial court should discharge the jury and direct a retrial."  United States v. Isom, 88 F.3d 920, 923 (11th Cir. 1996) (citing Wade v. Hunter, 336 U.S. 684, 689 (1949)); see United States v. Spence, 163 F.3d 1280, 1283-84 (11th Cir. 1998).  The district court's discretion will not be disturbed unless its decision is without factual support or was made for a legally irrelevant reason.  United States v. De La Vega, 913 F.2d 861, 869 (11th Cir. 1990).

Here, the district court did not abuse its discretion by denying Scott's motion to dismiss the indictment following a mistrial.  As the record shows, Scott's original trial was twice delayed by medical issues after the jury was empaneled but

before anything substantive occurred -- first, his own high blood pressure, and then the high-risk pregnancy of the government's toxicology witness. Although the unavailability of the government's toxicology expert requires the strictest scrutiny, the record supports the district court's determination of manifest necessity.

For starters, the parties do not dispute that the toxicologist was present and prepared to testify on the original trial date. Further, her subsequent medical unavailability -- caused by a high risk pregnancy -- was not the result of a serious lack of preparedness or an effort to purposefully derail the trial on the government's behalf. Rather, the government was prepared to have another toxicologist test the substances so that a trial could continue with or without the original jury. Moreover, when the district court contacted jurors to set a new date -- presumably using the government's subsequent toxicologist -- it was juror unavailability that frustrated the possibility of continuing with the original jury.

On this record, the district court concluded that it would either give Scott the option of proceeding with a jury of 11 or it would grant the government's motion for a mistrial. The district court considered the reasonable alternatives to declaring a mistrial by initially securing the jurors' consent to reset the trial for May 27, and by subsequently attempting to reschedule the trial to accommodate the jurors' schedules and the government's toxicologist issue. In exercising its discretion, the district court was not bound to pursue the alternatives until it was absolutely

infeasible to exercise one. The district court spent multiple days considering the options, such as rescheduling or proceeding with 11 jurors, it discussed its thoughts with the parties, and it gave Scott a chance to reflect upon the options and to consult with counsel.

As this record shows, the district court's action in declaring a mistrial was deliberate, rather than abrupt or erratic. Although the district court did not explicitly state that Scott would benefit from the declaration of a mistrial, it also does not appear that the district court's grant of a mistrial either unduly benefited the prosecution, or exuded judicial interference. Indeed, when the court initially adjourned on day one for Scott's health concerns, nothing substantive had occurred. In addition, the mistrial arguably occurred when each side had received the benefit of a continuance -- one for Scott's health and one for the government's witness's health. Thus, although the mistrial ultimately came in response to the government's request, there is no indication that a benefit inured to either party. Accordingly, the district court did not abuse its discretion in finding that a manifest necessity existed, granting the government's motion for a mistrial, and denying Scott's motion to dismiss the indictment.

**AFFIRMED**.